## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AMERICAN ASSOCIATION OF PEOPLE
WITH DISABILITIES, FEDERATION OF
WOMEN'S CLUBS OVERSEAS, NEW
MEXICO PUBLIC INTEREST RESEARCH
GROUP EDUCATION FUND, and
SOUTHWEST ORGANIZING PROJECT,

      Plaintiffs,

vs.                                       No. CIV 08-0702 JB/WDS

MARY HERRERA,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Shannon Robinson's Motion to Intervene, filed August 18, 2008 (Doc. 25)("Robinson's Motion"); and (ii) Nazarena Martinez, Justine Fox-Young, Rhoda Coakley, and the Republican Party of New Mexico's Motion to Intervene, filed August 18, 2008 (Doc. 27)("Motion to Intervene"). The Court held hearings on August 19, 2008 and August 29, 2008. The primary issues are: (i) whether the Court should permit Shannon Robinson, a state Senator, to intervene as a Defendant in this case regarding the legality of New Mexico's voter-registration law; (ii) whether the Court should permit Nazarena (Nina) Martinez, Secretary of the Republican Party of New Mexico and a voter, to intervene as a Defendant; (iii) whether the Court should permit Justine Fox-Young, a state Representative for District 30 and a candidate for re-election in the general election on November 4, 2008, to intervene as a Defendant; (iv) whether the Court should permit Rhoda Coakley, the Chavez County Clerk, to intervene as a Defendant; and (v) whether the Court should permit the Republican Party of New Mexico

("RPNM"), a Section 527 non-profit organization, to intervene as a Defendant.  Because the Court concludes that Robinson may not intervene as of right, and because allowing Robinson to intervene permissively would likely delay the resolution of the case without any concomitant benefits, the Court will deny Robinson's motion.  Because Martinez, Fox-Young, Coakley, and the RPNM are all unable to meet the requirements to intervene as of right, and because allowing them to intervene permissively would likely substantially slow the resolution of the preliminary injunction issue, the Court will deny their motion.

## FACTUAL BACKGROUND

In 2005, the New Mexico Legislature amended its electoral statute.  The amendments included new requirements for third parties – persons or organizations other than government officials – who register voters.  Four individuals and one political party seek to intervene in this case, which involves the constitutionality and legality of  those new amendments

**1.     N.M.S.A. 1978, § 1-4-49.**

Section 1-4-49 of the New Mexico Statutes, N.M.S.A. 1978, § 1-4-49, is a state electoral law dealing with voter registration in New Mexico.  In March of 2005, the New Mexico Legislature passed Senate Bill 678 ("SB 678") as part of a package of bills aimed at electoral reform.  SB 678 included amendments to laws regarding voter registration, voter identification, and paper records of  v o t e r's  b a l l o t s.    S e e  Legislative  History  o f  S B  678, http://legis.state.nm.us/lcs/_session.asp?chamber=S&type=++&number=678&submit=Search&year=05.  Part of SB 678 was later codified as Section 1-4-49 of the New Mexico Statutes, N.M.S.A. 1978, § 1-4-49.

The statute mandates the registration of third-party registration agents and provides for various procedures and penalties regarding the activities of third-party registration agents.  See

N.M.S.A. 1978, § 1-4-49.  The statute has been in effect for more than three years.  See N.M.S.A. 1978, § 1-4-49 (history).

      2.      **Proposed Defendants in Intervention.**

Robinson is  a resident of Albuquerque, a citizen of New Mexico, "a voter, and a  New Mexico State Senator concerned about fraud, possible fraud, and the perception of fraud in the registration process."  Robinson's Motion ¶ 3, at 2.   Robinson, as a member of the New Mexico State Senate, voted in favor of the statutes that the Plaintiffs attack.  See id. ¶ 4, at 2.  Robinson "supports meaningful requirements with regard to voter registration, to provide confidence in the registration and election process."  Shannon Robinson's Memorandum in Support of Motion to Intervene at 1-2, filed August 18, 2008 (Doc. 26)("Robinson's Memo. in Support").  Robinson is aware of the alleged problems in the voter-registration process that led to the enactment of the statutes at issue from public reports and debate in the Legislature.  Id. at 2.

Martinez is a registered voter and the RPNM's Secretary.  See Motion to Intervene ¶ 1, at 1.  She has lobbied the New Mexico Legislature "for more effective registration and voter identification requests to deter fraud and to increase public confidence in the election process."  Id.

Fox-Young is currently a state Representative and a candidate for state Representative for District 30 in the upcoming general election on November 4, 2008.  See id. ¶ 2, at 1.  She "has advocated and worked for effective registration and voter identification laws to deter fraud and to increase confidence in the election process."  Id.

Coakley is the Chavez County Clerk and has thirty years of experience as either the County Clerk or Chief Deputy County Clerk.  See Affidavit of Rhoda Coakley ¶ 2, at 1 (executed August 18, 2008)("Coakley Aff.").

The RPNM is a Section 527 non-profit organization.  See Motion to Intervene ¶ 4, at 2.

Section 527 organizations are tax-exempt political organizations, so named because of the section of the Internal Revenue Code they receive their tax-exempt status under. See 28 U.S.C. § 527 (2008). The RPNM employs persons who have registered as third-party registration agents and received training concerning the registration process. See id.

   3.   **The State Court Case.**

   The Plaintiffs filed a Complaint against Defendant New Mexico Secretary of State Mary Herrera in the Second Judicial District of New Mexico on July 24, 2008, seeking a determination that certain New Mexico statues, regulations, and practices are unconstitutional and unenforceable. See Exhibit 1 to Notice of Removal, Complaint for Declaratory and Injunctive Relief at 39-40, filed July 24, 2008 in the Second Judicial District Court, County of Bernalillo, New Mexico (Doc. 1-2)("Complaint"). The Plaintiffs did not request a temporary restraining order. See id. at 39-41. The Plaintiffs also do not identify any person who has been prevented from registering because of any statute or practice by the Secretary of State. The Plaintiffs maintain that the case was widely reported in the media, and that on July 24, 2008, when the Complaint was filed, Mr. Patrick Rogers, on behalf of the RPNM, indicated that the RPNM was considering intervening. See Declaration of John W. Boyd (taken August 20, 2008) ¶ 2, at 2, filed August 20, 2008 (Doc. 34-2)("Boyd Dec."). Rogers admits to telling Mr. John Boyd, the Plaintiffs' counsel, that he might try to intervene, but disputes saying he was going to intervene on the RPNM's behalf. See Letter from John Boyd to the Court (dated August 21, 2008)(Doc. 44)("Letter"). Mr. Boyd advises the Court to rely on Mr. Rogers' memory rather than on the Plaintiffs'. See Letter.

## PROCEDURAL BACKGROUND

   On July 29, 2008, the Defendant removed the state case to federal court under 28 U.S.C. § 1441. See Notice of Removal, filed July 29, 2008 (Doc. 1). On August 11, 2008, the Plaintiffs filed

a motion for a preliminary injunction to prevent the Defendant from enforcing N.M.S.A. 1978, § 1-4-49 and its implementing regulations and practices.  <u>See</u> Motion for Preliminary Injunction at 1, filed August 11, 2008 (Doc. 14).  The Defendant filed her response to the motion on August 15, 2008.  <u>See</u> Memorandum in Opposition, filed August 15, 2008 (Doc. 23).

On August 18, 2008, Robinson filed his motion to intervene, and Martinez, Fox-Young, Coakley, and the RPNM filed their motion to intervene later that same day.  Robinson did not contact the Plaintiffs' counsel before he filed his motion to intervene.  <u>See</u> Robinson's Motion ¶ 6, at 2.  Robinson contacted the Defendant's counsel and the Defendant does not oppose his motion. <u>See</u> <u>id.</u> ¶ 7, at 2.

Martinez, Fox-Young, Coakley, and the RPNM contacted the Plaintiffs' counsel about their motion, but at the time they filed their motion to intervene, the Plaintiffs' counsel had not responded to the motion except to note their opposition to the request for a continuance.  <u>See</u> Motion to Intervene ¶ 5, at 2.  Martinez, Fox-Young, Coakley, and the RPNM also contacted the Defendant's counsel, and the Defendant does not oppose their motion.  <u>See</u> <u>id.</u> ¶ 6, at 2.

Robinson moved the Court, pursuant to rule 24 of the Federal Rules of Civil Procedure, for an order permitting him to intervene in this lawsuit as a Defendant.  <u>See</u> Robinson's  Motion at 1. Robinson did not have an answer to file and requested a reasonable continuance of the hearing on the preliminary injunction to allow for the preparation of an answer to the Complaint and response to the motion for a preliminary injunction.  <u>See</u> <u>id.</u> at 2-3.

Martinez, Fox-Young, Coakley, and the RPNM also moved the Court, pursuant to rule 24, for an order allowing them to intervene in the action as Defendants.  <u>See</u> Motion to Intervene at 3. They also did not have an answer to attach to their motion and requested a reasonable continuance of the hearing on the preliminary injunction to allow for the filing of an answer to the Complaint and

a response to the motion for preliminary injunction.  See id. ¶ 7, at 2.

At the August 19, 2008 hearing, the Court heard initial argument on the motions to intervene. The prospective intervenors indicated their desire to participate fully in the proceedings if allowed to intervene.  See Transcript of Hearing at 14-15, 34 (taken August 19, 2008)(Doc. 40)("August 19 Tr.").[1]  The Defendant did not oppose the motions to the extent that the proposed intervenors sought to defend that constitutionality of the voter-registration law, but did oppose any use of the proceedings by any intervenor to introduce evidence that organizations like the Plaintiffs had "somehow subverted the electoral process."  Id. at 35.  The Plaintiffs urged a prompt resolution of its motion for preliminary injunction so that, if the decision is adverse, it could promptly appeal to the United States Court of Appeals for the Tenth Circuit.  See id. at 17-18, 32 (Boyd).  Given that the Plaintiffs had not had an opportunity to fully review the motions to intervene, formulate a position, or file a written response, the Court declined to issue a ruling on the motions at that time and set a hearing on the motions to intervene for August 29, 2008.  See id. at 35, 230-31.

On August 20, 2008, the Plaintiffs filed a motion in opposition to the motions to intervene. See Memorandum in Opposition to Motions to Intervene of Shannon Robinson and Nazarena ("Nina") Martinez, et al., filed August 20, 2008 (Doc. 34)("Response").  The Plaintiffs contend that "[t]he proposed intervenors filed their motions to intervene on the eve of Plaintiffs' preliminary injunction hearing," despite being aware of the Plaintiffs' complaint when it was filed almost four

---

[1] The prospective intervenors stated that they did not want to participate as amicus curiae. See id. at 33-34 (Rogers, on behalf of Martinez, Fox-Young, Coakley, and the RPNM), 34 (Robinson).  The Plaintiffs stated that, given that the prospective intervenors had filed their motion the day before the hearing, they wanted an opportunity to respond.  See id. at 32-33(Boyd). Maritnez, Fox-Young, Coakley, and the RPNM said they would try to filed their reply by August 20, 2008.  See id. at 229.  While the Plaintiffs did not fully state their position at the August 19, 2008 hearing, they indicated that they would not oppose the RPNM's intervention at a later time, but that they would oppose their intervention for the preliminary injunction.  See id. at 31-32.

weeks earlier.  Id. at 2.  The Plaintiffs maintain that the intervenors "failed to identify interests that are not adequately represented by the Defendant."  Id. at 3.  The Plaintiffs therefore argue that the proposed intervenors' motions are untimely and will result in irreparable harm to the Plaintiffs' constitutional rights, and that the proposed intervenors lack a protectable interest that the Defendant is not already adequately representing.  See id. at 1.

On August 21, 2008, Robinson filed a reply brief.  See Shannon Robinson's Reply Brief in Support of Motion to Intervene, filed August 21, 2008 (Doc. 35)("Robinson's Reply").  Robinson stated that he is a plaintiff in Silva v. Chavez, CV-2008-08053, in state court.  See Robinson's Reply ¶ 1, at 1.  He states that Southwest Organizing Project ("SWOP"), a plaintiff in this action, is a defendant in Silva v. Chavez.  See id.  Robinson believes SWOP has been illegally using charitable and deductible funds to finance political attack ads against him and other legislators to influence the primary election.  See id.  Robinson maintains that he believes SWOP "and other parties similarly situated are violating state and federal law with regard to registration and disclosure of donors."  Id. ¶ 2, at 1.  Robinson contends that SWOP and "related groups"

> seriously distort the public contribution information of candidates they oppose in order to prepare political attack ads to improperly influence elections. They (mis)use the public contribution information to prepare these distorted and false claims, all in the name of "good open government" while refusing to register or timely disclose who is funding their dirty and false campaigns.

Id. ¶ 3, at 2.  Robinson contends that it is his intention, through his state lawsuit and his intervention in this federal action, "to provide the court and the voters and citizens of New Mexico with information about the practices of SWOP and others who employ similar tactics."  Id. at ¶ 4, at 2. Robinson maintains that:

> If SWOP and other similarly situated Plaintiffs are allowed to ignore the 48-hour rule and continue registering voters and withholding their contact information from the Secretary of State, County Clerks or candidates, political parties, me or other

-7-

individuals they will be provided yet another improper, illegal and very problematic advantage over honest candidates and person[s] who are registering, filing and timely disclosing important information.

Id. ¶ 6, at 2.

Also on August 21, 2008, Martinez, Fox-Young, Coakley, and the RPNM filed a reply brief. See Reply Brief in Support of Motion to Intervene by Nazarena "Nina" Martinez, et al., filed August 21, 2008 (Doc. 36)("Reply").  They argue that their motion to intervene is timely because it was filed a week after the Plaintiffs moved for a preliminary injunction.  See id. at 1.  They also argue that the motion was timely because the Court had not set any discovery deadlines, motions deadlines, or similar scheduling deadlines that would prejudice the Plaintiffs.  See id. at 4-5.  They also stated that they would file a draft answer the following day and requested permission to file a proposed response to the motion for preliminary injunction.  See id. at 5.

On August 22, 2008, Martinez, Fox-Young, Vicky Perea,[2] and the RPNM filed an answer to the Complaint.  See Intervenors' Answer to the Complaint for Declaratory and Injunctive Relief, filed August 22, 2008 (Doc. 37)("Intervenors' Answer").  On August 25, 2008, Martinez, Fox-Young, Coakley, and the RPNM filed a response to the Plaintiffs' motion for preliminary injunction. See Defendant-Interveners' Response to Plaintiffs' Motion for a Preliminary Injunction, filed August 25, 2008 (Doc. 38).

On August 29, 2008, the Court held a hearing on the motions to intervene.  Robinson did not appear at the hearing.  Martinez, Fox-Young, Coakley, and the RPNM contended that the Defendant was not adequately representing their interests for two primary reasons.  First, the Defendant's

---

[2] Vicky Perea was named in the Intervenors' Answer as a Defendant-Intervenor.  To the Court's knowledge, it is the first mention of her in the record.  The Court is not aware of her status in this case and does not address her as a potential intervenor.

counsel was taking the Plaintiffs' affidavits at face value, and Martinez, Fox-Young, Coakley, and the RPNM were skeptical that the Plaintiffs had ceased their third-party registration activities because of N.M.S.A. 1978, § 1-4-49. Martinez, Fox-Young, Coakley, and the RPNM suggested that the reason the Plaintiffs had ceased their registration activities is because ACORN, another third-party register of voters, had been so successful, making the Plaintiffs' efforts unnecessary. Transcript of Hearing at 31 (Rogers)(taken August 29, 2008)("August 29 Tr.").[3] Second, Martinez, Fox-Young, Coakley, and the RPNM argued that the Defendant was not adequately representing them, because it is not clear from the current record that all of the Plaintiffs have ever registered a voter in New Mexico and therefore have standing to bring their claims. See id. at 18 (Rogers).  For both issues, Martinez, Fox-Young, Coakley, and the RPNM contend that they wish to call representatives of the Plaintiffs, conduct discovery, and contest standing. See id. at 31 (Rogers).

The Defendant's counsel stated that he had good grounds for assuming, from the affidavits, that at least some of the Plaintiffs had registered voters in New Mexico and had standing. See id. at 29 (Fuqua).[4]  The Defendant mentioned that there was a case or controversy, and that the Court had jurisdiction under Article III of the United States Constitution.  The Defendant's counsel also stated he thought he was adequately representing the prospective intervenors' interests. See id. at 28 (Fuqua).

The Plaintiffs expressed concern that the intervenors would slow the resolution of the motion for preliminary injunction, and delay a ruling on the merits until too close to New Mexico's October

---

[3]  The Court's citations to the transcript of the August 29, 2008 hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[4]  The original, unedited transcript states that the speaker is unidentified, but it is clear from the context that it is Mr. Fuqua.

4, 2008 book closing date for registering voters for the November 2008 election dates.  See id. at 25 (Bridge).

The Court indicated that it was inclined to deny the motions to intervene.  See id. at 36-37 (Court).  The Court believed that Coakley, Fox-Young, and the RPNM had protectable interests, but that the Defendant was currently adequately representing those interests.  See id.  The Court also indicated that it was likely to deny the motion to intervene without prejudice as to Fox-Young and the RPNM.  See id. at 38 (Court).  The Court stated that it would remain vigilant to make certain that the Defendant continued to vigorously defend § 1-4-49, and that, if the Defendant had to agree to a consent decree or began to make concessions different than she has now, Fox-Young, Coakley, and the RPNM would be able to move again to intervene.  See id. at 38.  The Court also decided to allow the Intervenors' Answer to remain on file as an attachment to the Motion to Intervene, even though the Court had not granted leave for the filing of the Intervenors' Answer.  See id. at 66-67 (Court).  The Court stated that it had not read Martinez, Fox-Young, Coakley, and the RPNM's response to the Plaintiffs' motion for preliminary injunction and asked the proposed intervenors to withdraw their response.  See id. at 66.  Martinez, Fox-Young, Coakley, and the RPNM agreed to withdraw the response.  See id.

## STANDARDS FOR INTERVENTION

The Federal Rules of Civil Procedure allow for the intervention of new parties into a case pursuant to rule 24.  Rule 24(a) provides that, upon timely application, an applicant should be permitted to intervene when the applicant claims an interest in the action, and the applicant is so situated that disposition of the action may impair or impede the applicant's ability to protect that interest, and existing parties do not adequately represent the applicant's interest.  Rule 24(b) permits the court to allow an applicant to intervene where the applicant has a claim or defense sharing

common questions of law or fact with the main action.

**1.      Intervention as a Matter of Right.**

Rule 24(a) of the Federal Rules of Civil Procedure provides that:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>
> > **(1)** is given an unconditional right to intervene by a federal statute; or
> >
> > **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(bolded in original).  Under rule 24(a), an applicant for intervention may intervene as of right if: (i) the application is timely; (ii) the applicant claims an interest relating to the property or transaction that is the subject of the action; (iii) the lawsuit may as a practical matter impair or impede the applicant's interest; and (iv) existing parties do not adequately represent the applicant's interest.  See Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d 837, 840 (10th Cir. 1996).  The Tenth Circuit has "tended to follow a somewhat liberal line in allowing intervention."  Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002)(quoting Nat'l Farm Lines v. ICC, 564 F.2d 381, 384 (10th Cir. 1977)).  See Elliot Industries Ltd. Partnership v. BP America Production Co., 407 F.3d 1091, 1103 (10th Cir. 2005).  "Federal courts should allow intervention 'where no one would be hurt and greater justice could be obtained.'"  Utah Assoc. of Counties v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001)(citation omitted).

**a.      Timeliness.**

While rule 24 does not specify what makes a motion to intervene timely, the Tenth Circuit has held that "[t]he timeliness of a motion to intervene is assessed in light of all the circumstances,

including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Utah Assoc. of Counties v. Clinton, 255 F.3d at 1250 (internal quotation marks omitted). The Tenth Circuit also ruled that the "analysis is contextual" and that "absolute measures of timeliness" should not be used. Id. (internal quotation marks omitted). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention where no one would be hurt and greater justice could be attained." Id. (internal quotation marks omitted). See Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d at 840 (10th Cir. 1996)(stating that, for a party to intervene as a matter of right, the party must demonstrate that the motion to intervene is timely); Forest Guardians v. U.S. Dep't of Interior, No. CIV-02-1003 JB/WDS, 2004 WL 3426413 at *10 (D.N.M. January 12, 2004)(Browning, J.)(explaining that rule 24(b) allows permissive interventions "under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.").

An application is not untimely simply because of the "mere passage of time . . . rather, the important question concerns actual proceedings of substance on the merits." 6 Moore's Federal Practice § 24.21[1], at 83-84 (3d ed. 2008). Intervention is properly denied where, for example, a case is near its end stage, and allowing a party to intervene would cause undue prejudice and delay in the proceeding. See, e.g., United States v. Washington, 86 F.3d 1499, 1505 (9th Cir. 1996)(denying motion to intervene where litigation was in final stages); Associated Builders v. Herman, 166 F.3d 1248, 1257 (D.C. Cir. 1999)(denying motion to intervene where the proposed

intervenor sought intervention almost a year after the initial suit was filed and two weeks after judgment had been entered).  By comparison, intervention is proper where, despite the passage of time, there has been limited activity in the case and the intervention will not prejudice the existing parties.  See Utah Assoc, of Counties v. Clinton, 255 F.3d at 1250-51 (stating that motion to intervene was timely where filed approximately two and one-half  years after the case began, "in view of the relatively early stage of litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and motion to intervene").  Prejudice resulting from the intervention itself, as opposed to the intervenors' tardiness, cannot be considered in determining the timeliness of a motion.  See id. at 1250.

> **b.**    **Protectable Interest**.

Under Rule 24(a)(2), the intervenors must 'claim . . . an interest relating to the property or transaction which is the subject of the action.'"  See Utah Assoc, of Counties v. Clinton, 255 F.3d at 1251.  With regard to the interest to be protected, the Tenth Circuit "has tended to follow a somewhat liberal line in allowing intervention."  Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d at 841.  Determining the sufficiency of an applicant's interest is a highly fact-specific determination.  See Sanguine, Ltd. v. U.S. Dep't of the Interior, 736 F.2d 1416, 1420 (10th Cir. 1984)(noting that "courts have enjoyed little success in attempting to define precisely the type of interest necessary for intervention. . . . Thus, we determine whether an applicant's interest is sufficient by applying the policies underlying the 'interest' requirement to the particular facts of the case.")(citations omitted).  See Utah Assoc, of Counties v. Clinton, 255 F.3d at 1251-52.  The interest test is "'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'"  Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115 (citations

omitted).  See Utah Assoc. of Counties v. Clinton, 255 F.3d  at 1251-52.

While rule 24(a) does not specify the nature of the interest required for intervention as a matter of right, the Supreme Court has held that "what is obviously meant . . . is a significantly protectable interest."  Donaldson v. United States, 400 U.S. 517, 531 (1971).  The Tenth Circuit requires that the interest be "direct, substantial, and legally protectable."  Id. (quoting Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d at 840).

The threshold for finding the requisite legally protectable interest is not high.  The Tenth Circuit has stated that, in determining whether to grant intervention, the court may consider any significant legal effect on the applicant's interest, as the court is not bound by a strict res judicata test.  See Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior, 100 F.3d at 844 (stating "[s]uch impairment or impediment need not be 'of a strictly legal nature,'" and a court "'may consider any significant legal effect in the applicant's interest and [we are] not restricted to a rigid res judicata test.'")(quoting Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n, 578 F.2d 1341, 1345 (10th Cir.1978)).  Furthermore, the Tenth Circuit has deemed the mere threat of economic injury from the outcome of litigation to be sufficient for granting intervention.  See Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115.

An intervenor must specify a "particularized interest rather than a generalized grievance."  Chiles v. Thornburgh, 865 F.2d 1197, 1212 (11th Cir. 1989).  Intervenors are not permitted to raise interests or issues that fall outside of the issues raised in the lawsuit.  See Deus v. Allstate Ins. Co., 15 F.3d 506, 525 (5th Cir. 1994)("The intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors.").

### c.     Impairment of Interest.

> Rule 24(a)(2) also requires the intervenors to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest. . . .  To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.  This burden is minimal.

Utah Assoc, of Counties v. Clinton, 255 F.3d at 1253 (quoting Grutter v. Bollinger, 188 F.3d 394,

399 (6th Cir.1999)).  This inquiry is intertwined with the existence of an interest.  See Utah Assoc,

of Counties v. Clinton, 255 F.3d at 1253 ("[T]he question of impairment is not separate from the

question of existence of an interest.")(internal quotation marks omitted).  A third-party's interest

may be impaired "when the resolution of the legal questions in the case effectively foreclose the

rights of the proposed intervenor in later proceedings, whether through res judicata, collateral

estoppel, or stare decisis."  Ute Distrib. Corp. v. Norton, 43 Fed. Appx. 272, 270 2002 U.S. App.

LEXIS 14982, (10th Cir. 2002)(unpublished opinion).

### d.     Inadequate  Representation.

According to the Supreme Court, this prong of the intervention analysis requires the

intervenor to show only that representation of its interest "may be" inadequate, and the applicant's

burden on showing this element should be viewed as "minimal."  Trbovich v. United Mine Workers

of America, 404 U.S. 528, 538 n.10 (1972).  See Utah Assoc, of Counties v. Clinton, 255 F.3d at

1254 (same); National Farm Lines v. Interstate Commerce, 564 F.2d 381, 383 (10th Cir.

1977)(recognizing the proposed intervenor's "slight" and "minimal" burden of establishing that

representation of his interests "may be inadequate").  Although an applicant for intervention as of

right bears the burden of showing inadequate representation, that burden is the minimal one of

showing that representation may be inadequate.  See Utah Assoc, of Counties v. Clinton, 255 F.3d

at 1254.  Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of

Interior, 100 F.3d at 845 (stating that the "possibility of divergence of interest need not be great in order to satisfy the burden of the applicants."). This minimal burden is further reduced when it is the government that is supposed to adequately represent the potential intervenor's interest. See Utah Assoc. of Counties v. Clinton, 255 F.3d 1246, 1254-55 (10th Cir. 2001). "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." Utah Assoc. of Counties v. Clinton, 255 F.3d at 1255. The Tenth Circuit stated:

> [T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

Id. at 1255-56. Thus, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. Id. at 1255.

### e. Cases Involving Political Parties and Party Officials

In United States v. State of Alabama, 2006 WL 2290726 (M.D. Ala. August 8, 2006), an intervenor sought to intervene both as an individual and as chairman of the Alabama Democratic Conference. See 2006 WL 2290726 at *1. The district court found inadequate the intervenor's alleged interests, because, "[e]ven if the alleged interest were a legally protectable interest, the proposed intervenors cannot establish entitlement to intervention by relying on the conclusory and bald allegation of a mere 'perception" of partisan politics.'" Id. at *4. The district court noted that,

"[a]s a practical matter, this allegation could be made regardless of which individual is appointed to carry out the [Help America Vote Act of 2002] implementation."  Id. Thus, the district court determined that the interest was too generalized to permit intervention:

> This is because most Alabama voters could be fairly characterized as having expressed at one time or another a general party affiliation.  Because the alleged interest could be claimed by any voter, the interest is only of a general – not a direct and substantial – concern. Such general interests do not justify intervention in litigation brought by the United States against a state for the enforcement of a federal statute.

Id. (footnote omitted).  The intervenor argued "that it may or may not be the case that appointment of a special master who is a Republican creates the perception that the Republican Party seeks to control the voter registration database to its own ends."  Id. (internal quotation marks omitted).  The district court also determined that the "speculative nature of the alleged interest . . . clearly demonstrates that the alleged interest is not related to the property or transaction that is the subject of the lawsuit."  Id.  The district court also rejected the intervenor's contention that his interests and the interests of the Alabama Democratic Conference were inadequately represented in the lawsuit, because "all of the parties, amici, and voters of Alabama have an interest in the enforcement of HAVA. . . . All other interests, including the proposed intervenors' partisan concerns, are subordinate to the implementation of the database."  Id. at *5.  The district court denied the intervenor permissive intervention, stating:

> This lawsuit is about whether Alabama has violated Section 303 of HAVA and, if so, how to remedy the violation; the proposed intervenors challenge neither the violation nor the remedy. Instead, they seek to prevent the possible perception or suspicion that partisan politics may have an effect on the creation of a voter registration database. This suggestion, which is vague, speculative, and wholly unsupported by any evidence, is not at issue in this case, much less the "main" issue required by the rule.

Id. at *9.

The United States Court of Appeals for the Ninth Circuit stated in <u>Yniguez v. Arizona</u>, 939 F.2d 727 (9th Cir. 1991), that "[t]here is a virtual per se rule that the sponsors of a ballot initiative have a sufficient interest in the subject matter of litigation to intervene pursuant to" rule 24(a).  <u>Id.</u> at 735.  <u>See</u> <u>also</u> <u>Washington State Bldg. & Constr. Trades Council v. Spellman</u>, 684 F.2d 627, 630 (9th Cir.1982), <u>cert.</u> <u>denied</u>, 461 U.S. 913, (1983).  On the other hand, "[a] generalized public policy interest shared by a substantial portion of the population does not confer a right to intervene."  <u>Bates v. Jones</u>, 904 F.Supp. 1080, 1086 (N.D.Cal. 1995).

    **2.**       **Permissive Intervention.**

Rule 24(b) of the Federal Rules of Civil Procedure provides:

**(b) Permissive Intervention.**

> **(1) In General.** On timely motion, the court may permit anyone to intervene who:

>> **(A)** is given a conditional right to intervene by a federal statute; or

>> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

> **(2) By a Government Officer or Agency.** On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

>> **(A)** a statute or executive order administered by the officer or agency; or

>> **(B)** any regulation, order, requirement, or agreement issued or made under the statute or executive order.

> **(3) Delay or Prejudice.** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(bolded in original).  "To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation."  <u>San Juan County, Utah v. United</u>

States, 503 F.3d 1163, 1207 (10th Cir. 2007)(en banc).  Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse.  See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d 1424, 1427 (10th Cir. 1990).  The court is required to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention.  See F. R. Civ. P. 24(b)(3). See DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts required to consider undue prejudice or delay in deciding whether to grant permissive intervention).  While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.  See City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

**LAW REGARDING STANDING TO INTERVENE**

Intervenors are not required to establish standing sufficient to meet the standards of Article III of the United States Constitution.  See San Juan County, Utah v. United States, 503 F.3d 1163, 1172 (10th Cir. 2007)(en banc)(holding "that parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case.")(internal quotation marks omitted).  Nevertheless, there are not many cases involving intervenors similar to the prospective intervenors here, and the standing cases give some guidance about the interests at issue.  Accordingly, recognizing that the standing cases are not directly applicable to this case, the Court will discuss them for the guidance they may provide.

1.      **Legislators.**

Legislators do not have standing to intervene simply because they voted for a legislative act

later invalidated by a court.  See, e.g., Tarsney v. O'Keefe, 225 F.3d 929, 939 (8th Cir. 2000).  "The

general rule is that when 'a court declares an act of the state legislature to be unconstitutional,

individual legislators who voted for the enactment [have no standing] to intervene.'"  Id. at 939 (8th

Cir. 2000)(quoting Planned Parenthood of Mid-Missouri and E. Kan., Inc. v. Ehlmann, 137 F.3d

573, 578 (8th Cir. 1998)).  The United States Court of Appeals for the Eighth Circuit rejected two

appellants' contention that they had standing "as former state legislators based on their legislative

involvement with the statutes overturned."  Tarsney v. O'Keefe, 225 F.3d at 939.  The Eighth Circuit

noted: "Even if these appellants might have had legislator standing at some point, such standing

would have terminated when they left office."  Id.  This conclusion is bolstered by the fact that a

legislature could affirmatively grant standing to legislators in such circumstances if it wished to do

so.  See Planned Parenthood of Mid-Missouri and E. Kan., Inc. v. Ehlmann, 137 F.3d 573, 578 (8th

Cir. 1998).

        In Planned Parenthood of Mid-Missouri and Eastern Kansas, Inc. v. Ehlmann, the Eighth

Circuit explained that "legislators may obtain standing to defend the constitutionality of a legislative

enactment when authorized by state law," but rejected the legislators' contention that they had

standing "to defend the constitutionality of an appropriations bill that was passed in compliance with

the state's asserted interest as expressed by" that statute.  137 F.3d at 578.

        In State v. American Tobacco Co., No. 5-98CV-270, 1999 WL 1022130 (E.D.Tex.

November 5, 1999), the United States District Court for the Eastern District of Texas stated:

> While Article III requires parties to have standing, it does not require intervenors to
> independently possess standing to intervene in a continuing case or controversy
> when the ultimate relief sought by the intervenor is sought by another party with
> standing to do so. See Ruiz v. Estelle, 161 F.3d 814 (5th Cir.1998), cert. denied, 119
> S.Ct. 146 (1999). This Court, by separate order, has granted Legislators' motion to
> intervene. The relief sought by the Governor is the same relief sought by the
> Legislators. Therefore, Governor Bush does not need an independent basis for

standing to intervene.

1999 WL 1022130  at *1.

## 2. **Political Parties.**

In Santiago Collazo v. Franqui Acosta, 721 F.Supp. 385 (D.P.R. 1989), the United States

District Court for the District of Puerto Rico found that a political party and the mayor of a

municipality, who was the party's president, lacked standing to intervene in an action that

challenged alleged conduct by government officials discriminating against members of that political

party by giving preferences in assignment of funds to the political party to which the government

officials belonged.  See 721 F.Supp. at 387, 390.  The court explained:

> An organization can, however, sue in certain cases to protect the rights of its
> members, with standing based on the injury to the members. The Supreme Court has
> stated:
>
> [W]e have recognized that an association has standing to bring suit on behalf of its
> members when: (a) its members would otherwise have standing to sue in their own
> right; (b) the interests it seeks to protect are germane to the organization's purpose;
> and © neither the claim asserted, nor the relief requested, requires the participation
> of individual members in the lawsuit.

Id. at 390 (quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343

(1977)).  The court found that the political party failed the first prong of the test, because

> although it may be simply due to a poorly drafted pleading[, n]owhere in the motion
> to intervene is it even alleged who the members of the [the political party] are, or that
> any of them suffer actual or threatened harm. While the organization has stated that
> "one of its priorities is the welfare of the residents of the Island Municipality of
> Vieques who are in great need of housing and or economic development," it has
> failed to allege that any of these residents for whose welfare the party is concerned
> are actually members of the party.

Santiago Collazo v. Franqui Acosta, 721 F.Supp. at 390.

## **ANALYSIS**

As an initial matter, the proposed intervenors need not have Article III standing to intervene

in a case.  Here, Fox-Young, Coakley, and the RPNM have or may have a protectable interest.  Fox-Young, Coakley, and the RPNM have not, however, shown that the Defendant is not adequately representing their interests or that permissive intervention is warranted under the circumstances of this case.

## I.   THE MOTIONS TO INTERVENE ARE TIMELY.

The Plaintiffs contend that the intervenors waited until the eve of the preliminary injunction hearing to submit their motions, although "the proposed intervenors knew of their interests in this case" when the Plaintiffs filed their complaint nearly four weeks ago.  Response at 2.  In response, Martinez, Fox-Young, Coakley, and the RPNM contend that the Plaintiffs' delayed filing of a request for preliminary injunction in a matter that raises so many issues of fact and law suggests that a careful consideration, investigation, and analysis is appropriate.  Martinez, Fox-Young, Coakley, and the RPNM assert that a short continuance of a week or ten days cannot prejudice the Plaintiffs who chose to wait more than three years to file the motion for preliminary injunction.

The primary purpose of the timeliness requirement is to guard against prejudice to the original parties and not to sanction proposed intervenors who might have intervened earlier.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1250.  Prejudice resulting from the intervention itself, as opposed to the intervenors' tardiness, cannot be considered in determining the timeliness of a motion.  See id.  The court cannot say that the intervention itself will not prejudice the Plaintiffs in this case, but the timing of the intervention does not.

The statute has been in existence for more than three years, but the Plaintiffs filed their case within the last month.  There is no reason to think that the potential intervenors knew that the Plaintiffs were going to file this suit, or had their motions to intervene, substantive research, briefing, affidavits, and intervenors all done and all lined up.  The motion for preliminary injunction

contains a serious suggestion that N.M.S.A. 1978, § 1-4-49 is unconstitutional.  The motion for preliminary injunction is very lengthy, and raises a number of issues that suggest an investigation and careful consideration are in order before the Court allows the case to proceed.  It is reasonable to assume that it took the potential intervenors some time to assess the suit and the need for filing.

Moreover, the Plaintiffs did not file a motion for a temporary restraining order.  Instead, the Plaintiffs waited until August of 2008 to file their motion for a preliminary injunction.  The prospective intervenors filed their motions to intervene one week after the Plaintiffs filed their motion for a preliminary injunction.

Despite all the activity in this case, litigation is at an early stage, and there has been limited activity to date.  The motions to intervene were filed a week after the motion for a preliminary injunction.  Under these circumstances, while the potential intervenors could have filed their motions earlier, the motions to intervene are timely.

## II.   <u>ROBINSON IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT</u>.

Robinson contends that he is entitled to intervene as a matter of right under rule 24(a)(2).  Rule 24(a)(2) provides that, upon timely application, an applicant shall be permitted to intervene when (i) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (ii) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (iii) existing parties do not adequately represent the applicant's interest.  <u>See</u> <u>Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior</u>, 100 F.3d at 840.  Robinson does not have a legally protectable interest in this action, his ability to protect his interests would not be impeded or impaired by not being allowed to intervene, and the current Defendant  adequately represents any interests he may have in this action.  Because Robinson cannot meet rule 24(a)'s requirements,  he

cannot intervene under rule 24(a).

**A.     ROBINSON DOES NOT HAVE A LEGALLY PROTECTABLE INTEREST IN THE SUBJECT OF THIS ACTION AS RULE 24(a) DEFINES THAT TERM.**

Robinson asserts that he has a protectable interest in this suit because he is a voter and because he was a legislator who voted in favor of the challenged statute.  These interests, however, are not ones that can be recognized as the basis of a rule 24(a) intervention.  Registration fraud is a legitimate concern of any voter and certainly of the legislators who enacted the statute under attack.  Because, however, Robinson shares his interest with almost everyone else, and has no particularized interest in this case, Robinson's interest is a generalized one and not the sort of particularized interest that is required for intervention of right.  See Chiles v. Thornburgh, 865 F.2d at 1212.

The Court need not decide whether a legislator should never be allowed to intervene when a statute for which the legislator voted is challenged in court.  Robinson did not sponsor the legislation, so he has no more special relationship with the statute than any other legislator who voted for the statute, which was a majority of the legislature.  Legislators do not have, under the case law, standing by virtue of voting for a piece of legislation, and given the link between standing and protectable interests, voting for a bill alone will not create a protectable interest absent unusual circumstances.  See Tarsney v. O'Keefe, 225 F.3d at 939 (8th Cir. 2000)(stating that standing cannot come solely from voting for a bill).  Moreover, unlike most legislators who voted for the statute, Robinson is not running for re-election in the upcoming general election; he lost the primary election.  See August 19, 2008 Tr. at 8.  Hence, Robinson does not have the same interest as a legislator running for election or re-election, who does not want fraud or potential fraud threatening his or her election.  While the Court does not doubt Robinson's passionate interest in preventing

voter fraud, the Court concludes that Robinson's interest as a legislator who voted for the statute does not give him a  protectable interest under rule 24(a).

The Court also does not believe that Robinson's status as a candidate in the most recent election – the Democratic primary – is sufficient to bestow an interest under rule 24 on him.  While Robinson feels wronged by one of the Plaintiffs' activities in that election, that election is in the past; the results of this case will not impact that election or have any impact on Robinson's career. With no more legislative sessions scheduled for the rest of Robinson's career, his interest in the constitutionality of voter registration laws is currently not significantly different from that of other voters or citizens.

The Court does not believe that Robinson's status as a voter or citizen gives him a protectable interest under rule 24.  While it might, at first blush, appear that voters have a special interest in avoiding voter registration fraud, so that their votes count as much as they should, on closer reflection, all citizens, non-citizens, and people who do not even reside in New Mexico have an interest in fair New Mexico elections.  This election cycle will elect a president, and practically every person in the world has an interest in whom the United States elects president and whom the voters of New Mexico send to Congress.  These elections will help shape the course of the nation's domestic and foreign policy.  Unless the Court is prepared to say that almost anyone who wants can intervene in this case as a matter of right, which it is not, Robinson's status as a voter or citizen does not provide him with a protectable interest under rule 24.  Such generalized interests do not fit within the framework of the direct, substantial, and legally protectable test.  See Utah Assoc, of Counties v. Clinton, 255 F.3d at 1250.

**B.      ROBINSON IS NOT SO SITUATED THAT THE DISPOSITION OF THE ACTION MAY, AS A PRACTICAL MATTER IMPAIR OR IMPEDE HIS ABILITY TO PROTECT HIS INTEREST IN THE SUBJECT OF THIS ACTION.**

Robinson has not made an adequate showing that disposition of this action may "impair or impede" his interest. Fed. R. Civ. P. 24(a)(2).  While the burden of the required showing is minimal, it is not a meaningless test.  The inquiry into what impairs the ability to protect  a right is linked with the determination of whether the proposed intervenor has a protectable interest.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1253.  Where no protectable interest is present, there can be no impairment of the ability to protect it.

**C.      THE EXISTING DEFENDANT ADEQUATELY REPRESENTS ROBINSON'S INTERESTS.**

Robinson contends that the Secretary of State does not adequately represent his interests. The Plaintiffs contend that, to the extent Robinson has any recognizable interest in this matter, the Defendant is already asserting and representing Robinson's interests.  See Reply at 5.  The Plaintiffs are correct on this point.  Robinson asserts interests in preventing fraud and maintaining confidence in the election process**.**  Even if those general interests are protectable under rule 24(a) and Robinson's ability to protect them would be impaired by his absence from the case, the Defendant is vigorously asserting and adequately representing those interests.

That the Defendant is the Secretary of State, a member of the government, does not change this conclusion.  In the right circumstances, the burden of demonstrating inadequate representation can be met by showing that "the party upon which the intervenor must rely is the government." Utah Assoc. of Counties v. Clinton, 255 F.3d at 1254.  The Tenth Circuit noted that the government's obligation "is to represent not only the interest of the intervenor but the public interest generally."  Id. at 1255.  Thus, when a prospective intervenor shows that the "public interest the

government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met.  Id. at 1255.  Utah Assoc. of Counties v. Clinton concerned a proclamation issued by President Clinton that reserved approximately 1.7 million acres of federal land in Utah from public entry, creating the Grand Staircase Escalante National Monument.  See id. at 1248.  The intervenors were environmental organizations asserting an interest in conservation and businesses asserting interests in tourism revenue from the creation of the Monument.  See id. at 1252.  The government was attempting "to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible."  Id. at 1255.  The situation in this case is different from that in Utah Assoc. of Counties v. Clinton.  The Defendant here is representing the public interest in fair elections free of fraud. Robinson is asserting the same public interest and not "an individual parochial interest" that might be hostile to the public interest represented by the government.  Id. at 1256.  As such the Defendant is adequately representing the interests Robinson has in this litigation and Robinson is precluded from intervening as a matter of right.

III.    **MARTINEZ IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

While Martinez is an official of the RPNM, she primarily asserts that her interest is as a voter.  Martinez contends that, under any analysis, and certainly under the Tenth Circuit's liberal analysis towards intervention, she satisfies each of the criteria required for intervention.  The Court, however, believes that Martinez does not meet rule 24(a)'s requirements and is not entitled to intervene as a matter of right.

A.    **MARTINEZ DOES NOT HAVE AN INTEREST IN THE SUBJECT OF THIS ACTION AS RULE 24(a) DEFINES THAT TERM.**

Martinez contends that her rights to an honest and accountable registration system, and the

right of people to vote and to have their votes counted, are unquestionably significant protectable interests.  She also contends that voter fraud, registration fraud, and threats to the sanctity of the ballot process because of fraud or possible fraud are legitimate concerns of individual voters. Martinez asserts that she has an interest in promoting equal voting rights and combating voter registration fraud.  She further contends that the Plaintiffs' litigation puts the registration ballots and the New Mexico voters at the risk of fraud.  Martinez maintains that the elimination of the modest identification requirements, as the Plaintiffs propose, will further erode public confidence in the election process and discourage voters from voting in the future election.  She favors effective registration requirements to address voter-registration fraud that has already occurred.

Voting rights are unquestionably important, and preserving the integrity of the electoral process is a legitimate and important interest.  See Burdick v. Takushi, 504 U.S. 428, 433 (1992). This broad interest, however, is essentially the same interest that Robinson asserts: that any voter has an interest in fair elections and the prevention of voter registration fraud.  Like Robinson's argument, however, Martinez' asserted interest suffers from the same fatal flaw of being too general an interest to form the basis of a rule 24(a) motion.  See Chiles v. Thornburgh, 865 F.2d at  1212.

In addition to asserting an interest as a registered voter, Martinez is the Secretary of the RPNM.  She does not, however, appear to assert this position as a basis for intervention, and the Court need not address this as a separate or additional ground.  In any case, for the reasons that the Court sets forth for denying the RPNM's motion to intervene, Martinez' reliance upon her position at the RPNM would not change the Court's analysis for her motion to intervene in her individual capacity.

B.     **MARTINEZ IS NOT SO SITUATED THAT THE DISPOSITION OF THE ACTION MAY, AS A PRACTICAL MATTER, IMPAIR OR IMPEDE HIS ABILITY TO PROTECT HIS INTEREST IN THE SUBJECT OF THIS ACTION.**

The existence of a protectable interest and whether that interest can be protected without intervention are closely related questions.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1253.  Because Martinez lacks a protectable interest, she also fails to meet the second prong of the test for intervention as a matter of right.

C.     **THE EXISTING DEFENDANT ADEQUATELY REPRESENTS MARTINEZ'S INTERESTS.**

Martinez is, like Robinson, asserting an interest that is not "an individual parochial interest." Utah Assoc. of Counties v. Clinton, 255 F.3d at 1255.  Her interest in fair elections and curtailing registration fraud are also part of the general public interest that is shared by all voters, and by the government, and that the Defendant is actively asserting and adequately representing.  Because she cannot meet the three elements necessary under rule 24(a), she cannot intervene as a matter of right.

IV.    **FOX-YOUNG IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

In some respects, Fox-Young's interest in this case resembles Robinson's.  In one significant respect, however, her interest is different.  She is, unlike Robinson, running for re-election.

A.     **FOX-YOUNG HAS NOT SHOWN THAT SHE HAS AN INTEREST IN THE SUBJECT OF THIS ACTION AS RULE 24(a) DEFINES THAT TERM.**

Fox-Young is currently a state Representative for District 30 and is a candidate for state Representative in the upcoming general election.  As someone who is a candidate, Fox-Young occupies a different position than that of Robinson, who while currently a legislator, will not be a candidate in the general election.  Fox-Young's asserted interests in a fair election, and in prompt access to accurate information on newly registered voters, see Reply at 5, is distinctly different from

the general interests in electoral fairness shared by all voters.  Voter fraud or an inability to access

voter information could effect the success of Fox-Young's candidacy.  As an actual candidate for

office Fox-Young could be impacted by the challenged laws and so could have the direct interest

protectable under rule 24(a).  See Utah Assoc, of Counties v. Clinton, 255 F.3d at 1250.

The problem of Fox-Young's motion is that, while she may have a protectable interest, she

has not shown that interest to be endangered in this case.  There is no evidence the Plaintiffs intend

to register in her district or that any third parties will register in her district.  Here fears from these

Plaintiffs' registration activities, ACORN's activities, or any registration activities remains

theoretical.  While the Court believes that Fox-Young may have a protectable interest, she has not,

in her affidavits or otherwise, established how that interest is endangered in this case.  Fox-Young's

counsel admitted that "there is no specific information" regarding any registration efforts in her

district.  August 29 Tr. at 17 (Rogers).  At the second hearing and in her reply, although not in her

initial briefing, Fox-Young asserted an interest in identifying new voters who would be likely to be

aligned with her views, speaking to these new voters, and getting these new voters to the polls.

See id. at 15-17; Reply at 5.  She asserted a special interest in the forty-eight hour deadlines for

turning in completed forms, because this deadline facilitated this political speech.  Her asserted

interest is similar to the First Amendment right that the Plaintiffs assert in their Complaint.  The

Court need not, however, decide whether Fox-Young's interest rises to the level of a First

Amendment right to note that it is an interest that is not general and is not shared by the general

population.  The Court's decision whether that interest is protectable may have to wait until the

Court decides this case on the merits.  Nevertheless, Fox-Young has not shown that enjoining the

Defendant from enforcing N.M.S.A. 1978, § 1-4-49 will impact her interests because she has not

shown that the Plaintiffs or others will cease turning in forms within forty-eight hours in her district.

-30-

While the Court finds that Fox-Young has not shown a protectable interest on the record, she may be able to do so at some point.  Accordingly, the Court denies her motion without prejudice to her renewing her motion with a better record of third-party registrants in her district.

**B.     FOX-YOUNG HAS NOT, ON THE RECORD, SHOWN THAT SHE IS SO SITUATED THAT THE DISPOSITION OF THE ACTION MAY, AS A PRACTICAL MATTER, IMPAIR OR IMPEDE HER ABILITY TO PROTECT HIS INTEREST IN THE SUBJECT OF THIS ACTION.**

Showing that impairment of protectable interests is possible if intervention is denied is not a high burden to meet.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1253.  The possibility of legal preclusion or adverse effects from stare decisis are sufficient to meet that burden.  See Ute Distrib. Corp. v. Norton, 43 Fed. Appx. at 279.  This element, however, is closely tied to whether she has a protectable interest.  It is possible that Fox-Young will be unable to protect her interests if denied intervention, because Fox-Young's interests are directly tied to her candidacy in the November election.  Thus, as a practical matter, she may be unable to protect her interests if she is not able to do so now.   Nevertheless, the record before the Court leaves the Court  speculating as to Fox-Young's interests in her district.  While Fox-Young may be able to satisfy this element, on the record she has not.

**C.     THE EXISTING DEFENDANT ADEQUATELY REPRESENTS FOX-YOUNG'S INTERESTS.**

The Plaintiffs contend that, to the extent Fox-Young has any general interest in preventing fraud or maintaining confidence in the election process, those interests are asserted and represented by the Defendant.  See Response at 5.  Fox-Young contends that the Defendant is not able to adequately represent her distinct interests.  At the present time, the Court believes that the Defendant is adequately representing the protectable interests Fox-Young may have in this case.

Fox-Young is asserting an interest in having the statute enforced to ensure fair elections and

prompt access to information on newly registered voters.  Even if Fox-Young has adequately shown that these are protectable interests under rule 24(a) and that those interests are in danger in this case, she has not shown that the Defendant is not adequately representing those interests.  The Defendant has adopted the same legal position that Fox-Young advocates and is defending vigorously the constitutionality of the statute.

While the Tenth Circuit has cautioned that district courts must be skeptical that the government can adequately represent private interests, it has not eliminated that requirement in cases against the government.  The potential intervenor still must make the minimal showing.  In her briefing, Fox-Young said that the Defendant was not representing her interests, but made no attempt to show how the Defendant's representation was inadequate.  Only at the hearing did Fox-Young identify a special interest in the forty-eight hour request and explain what she would do different than the Defendant.

As to standing, Fox-Young has only asserted strong claims regarding the standing of two of the Plaintiffs, see August 29 Tr. at 31, but regardless of whether or not all the standing of all the Plaintiffs are challenged, this case is likely to proceed, at least through the preliminary injunction hearing.  If the case proceeds, and the Defendant never questions or explores standing, Fox-Young remains free to renew her motion and seek to intervene again.

Second, Fox-Young contends that the Defendant is not questioning the Plaintiffs' affidavits and accepting the fact that the Plaintiffs ceased to conduct voter registration because of N.M.S.A. 1978, § 1-4-49.  Fox-Young expresses skepticism and suggests that the Plaintiffs ceased because ACORN is registering so many of the same voters that the Plaintiffs would.  Fox-Young offered no evidence to support her speculation.  If the case proceeds, the Defendant may need to explore this thoroughly with discovery, but at this stage there is no suggestion that the Defendant will not in the

course of this case.

Adequate representation does not mean exactly the same representation.  Sanguine Ltd. v. U.S. Dep't of Interior, 736 F.2d at 1419 ("Of course, representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case.").  Competent counsel, such as those representing the potential intervenors, can usually think up something the would do different from another attorney.  Mr. Rogers, Fox-Young's counsel, has presented two things he would do differently, but they are not, at least at that stage, so significantly different than what the Defendant is doing.  The Defendant has carried a lot of water so far, filing a number of affidavits and a comprehensive response to the motion for preliminary injunction.  There is no reason to think that the Defendant will not fully explore standing and the Plaintiffs' reasons for cessation of voter-registration activities as the case proceeds.

It is possible in the future that Fox-Young will supplement the record, fully establish her "parochial private interest," United Assoc. of Counties v. Clinton, 1255 F.3d at 1256, confirm that she has a protectable interest, and point out that the Defendant is not adequately representing her interests in material ways.  If the Defendant ceases to adequately represent Fox-Young's interests, the Court will not foreclose the possibility of future intervention by Fox-Young.  For the time being, though, her interests are adequately represented and so intervention as a matter of right is not available.

## V.    COAKLEY IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Coakley is in a similar posture as the Defendant.  Because the requested injunction would effectively enjoin Coakley from enforcing N.M.S.A. 1978, § 1-4-49, she has a protectable interest similar to the Defendant's.  Nevertheless, because she is a government official like the Defendant, she has not shown that the Defendant is not adequately representing her interests.

### A.   COAKLEY HAS AN INTEREST IN THE SUBJECT OF THIS ACTION AS RULE 24(a) DEFINES THAT TERM.

Coakley contends that her rights to an honest and accountable registration system, and the right to vote and to have votes counted are unquestionably significant protectable interests. Coakley further asserts that voter fraud, registration fraud, and threats to the sanctity of the ballot process because of fraud or possible fraud are legitimate concerns of individual county clerks. Coakley maintains that she has an interest in promoting equal voting rights and combating voter registration fraud.  Coakley, also, as a county clerk has statutory duties under the challenged laws and regulations.

As the Clerk of Chavez County, Coakley would be subject to the preliminary and permanent injunctions that the Plaintiffs seek.  If the injunction was issued, Coakley would be prohibited from performing certain electoral duties that New Mexico law requires.  This direct effect on what Coakley can and cannot do as a county clerk is the direct and substantial effect that is recognized as a legally protected interest under rule 24(a).  See Utah Assoc, of Counties v. Clinton, 255 F.3d at 1251.  Coakley therefore has a protectable interest in the subject matter of this case.

### B.   COAKLEY IS SO SITUATED THAT THE DISPOSITION OF THE ACTION MAY, AS A PRACTICAL MATTER, IMPAIR OR IMPEDE HER ABILITY TO PROTECT HER INTEREST IN THE SUBJECT OF THIS ACTION.

If the Court grants the relief that the Plaintiffs seek, Coakley's ability to protect her interests will be, as a practical matter, impaired.  If a preliminary injunction, or later, a permanent injunction, were granted, Coakley would be subject to that injunction.  This injunctive relief could make it difficult for Coakley to protect her interests by putting the burden on her to protect her statutory obligations by seeking to dissolve or modify the injunction.  It is possible that preclusion doctrines or stare decisis will prevent her asserting her interests if they are not raised now.  See Ute Distrib.

-34-

<u>Corp. v. Norton</u>, 43 Fed. Appx. at 279 (unpublished opinion).  Because of this possibility, Coakley meets the minimal burden required to show that her ability to protect her interest would be impaired by her absence.

### C.   THE EXISTING DEFENDANT ADEQUATELY REPRESENTS COAKLEY'S INTERESTS.

The Plaintiffs contend that Coakley's interests "are presumably identical to those of the County Clerk of Bernalillo County and the Chief Deputy Clerk of Santa Fe County, both of whom have submitted declarations in support of Defendant's position."  Response at 5.  Coakley contends that the existing parties do not adequately represent her interests.  She asserts that the Secretary of State's interests are broad, diverse, and could potentially shift or change because of politics, the nature of the political process, and litigation.

The showing necessary to establish that Coakley's interests are not adequately represented is a "minimal" burden, and she need only show that representation by the existing parties "may" be inadequate.  <u>See</u> <u>Utah Ass'n of Counties v. Clinton</u>, 225 F.3d at 1254-55.  It is true that Coakley's interests are not circumscribed or restricted by the political strictness and constraint inherent in the nature of all suits involving governmental entities.  But at the present time the Defendant is advocating for essentially the same position that Coakley espouses and is vigorously representing the interest that Coakley has in this action.  It is  certainly possible that in the future the Defendant will quit representing Coakley's interests adequately and so the Court will not foreclose the possibility of future intervention by Coakley if that were to occur.  For the time being, though, Coakley's interests are adequately represented and so she cannot intervene as a matter of right.  For substantially the same reasons that the Defendant is adequately representing Fox-Young, the Court

believes that the Defendant is adequately representing Coakley.[5]

## VI.    RPNM IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Because the RPNM has statewide candidates that the Plaintiffs' voter registration will or could impact, the RPNM has a protectable interest. This case's result could effect the RPNM's efforts for its candidates. As with Fox-Young and Coakley, however, the Defendant is currently adequately representing the RPNM's interest.[6]

### A.    RPNM HAS AN INTEREST IN THE SUBJECT OF THIS ACTION AS RULE 24(a) DEFINES THAT TERM.

The RPNM contends that voter fraud, registration fraud, and threats to the sanctity of the ballot process because of fraud or possible fraud are legitimate concerns of the RPNM. The RPNM asserts that it has an interest in promoting equal voting rights and combating voter registration fraud. The RPNM also states that it employs persons who have properly registered as third-party agents under the challenged law and have been trained as required. The RPNM contends that it is an entity that complies with the allegedly onerous and unconstitutional third-party registration limitations, and that it has important facts to present that are contrary to the Plaintiffs' presentation.

The Court does not believe that the RPNM has a protectable interest merely because it employs third-party registration agents and is thus directly impacted by N.M.S.A. 1978, § 1-4-49.

---

[5] Indeed, the case of the Defendant adequately representing Coakley is even stronger, because Coakley does not have the associational interest that Fox-Young is asserting.

[6] At the hearing on August 19, 2008, Mr. Boyd indicated that the Plaintiffs were not opposed to intervention by the RPNM at a later time so long as it did not delay resolution of the case. See August 19 Tr. at 31-32. The Court, of course, cannot guarantee there will be no delay once an intervenor is admitted and has all the rights of a party. The Plaintiffs also later stated that they opposed the motions to intervene in their actual response to the motions to intervene. See Response at 6. The Court will treat the Plaintiffs as being opposed to the motions to intervene by all the prospective intervenors, including the RPNM.

All third parties have this interest, and this not the particularized interest that can form the basis of intervention.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1251.  To the extent that the RPNM asserts generalized interests in fair election, it does not have a protectable interest, for the reasons that the Court has also stated.  What is unique about the RPNM is that it is running candidates in the upcoming election.  The RPNM's interest is similar to Fox-Young's.  Moreover, because the RPNM is running candidates statewide, the Plaintiffs' voter-registration efforts will effect some of the RPNM's candidates.

The RPNM is similar to the environmental organizations who many courts have recognized to have protectable interests in litigation challenging the goals of those organizations.  See id. at 1252.  As an organization involved in helping to elect candidates to office, it has a direct and specific interest in the litigation that is not the same general interest in fair elections that is common to all voters.  The Plaintiffs contend that "[c]ourts have been hesitant to permit the intervention of political parties . . . on the basis of indirect and speculative partisan concerns."  Response at 4 (citing U.S. v. Alabama, 2006 WL 2290726, at *3-4 (M.D. Ala. Aug. 8, 2008)).  The RPNM, though, is not asserting "indirect and speculative partisan concerns," but has a concrete interest in this action, and invalidation of the challenged law could directly impact its interest in getting its candidates elected.  Its protectable interest in this matter, unlike the prospective intervenor in U.S. v. Alabama, is not in vague, general interests such as preserving confidence in the electoral system.  Its protectable interest is a result of running a slate of state-wide candidates.

### B.   RPNM IS SO SITUATED THAT THE DISPOSITION OF THE ACTION MAY, AS A PRACTICAL MATTER, IMPAIR OR IMPEDE HIS ABILITY TO PROTECT HIS INTEREST IN THE SUBJECT OF THIS ACTION.

Showing that impairment of protectable interests is possible if intervention is denied is not a high burden to meet.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1253.  The possibility

of legal preclusion or adverse effects from stare decisis are sufficient to meet that burden.  See Ute

Distrib. Corp. v. Norton, 43 Fed. Appx. at 279.  It is certainly possible that the RPNM would be

unable to protect its interests if denied intervention, which is sufficient to meet rule 24(a)'s test.

### C.     THE EXISTING DEFENDANT ADEQUATELY REPRESENTS RPNM'S INTERESTS.

The RPNM contends that the existing parties are not adequately representing its interest.

The Plaintiffs maintain that the Defendant "has defended and continues to vigorously defend the

challenged law and any [RPNM] interest in combating voter-registration fraud."  Response at 6.  At

the moment, the Plaintiffs are correct.  The RPNM does not assert any protectable interest that the

Defendant is not already adequately protecting.

While the RPNM has a protectable interest stemming from its running a slate of state-wide

candidates and others who may be effected by the Plaintiffs' voter-registration efforts, the RPNM

seeks to intervene to protect its interests by defending the constitutionality of the registration law.

The Defendant is already advocating this position.  While the Defendant is governmental, the

RPNM's protectable interest is essentially the same as the public interest asserted by the Defendant,

not a distinct private interest.  See Utah Assoc. of Counties v. Clinton, 255 F.3d at 1256.  It is

certainly possible that in the future the Defendant will cease representing the RPNM's interests

adequately and so the Court will not foreclose the possibility of future intervention by the RPNM

if that were to occur.  For the time being, though, the RPNM's interests are adequately represented,

for substantially the reasons that the Defendant is adequately representing Fox-Young and Coakley,

and so intervention as a matter of right is not available to the RPNM.

**VIII.  THE COURT WILL NOT ALLOW ROBINSON, MARTINEZ, FOX-YOUNG, COAKLEY, AND THE RPNM PERMISSIVE INTERVENTION UNDER RULE 24(b) AT THIS TIME.**

In the alternative to intervening as a matter of right, Robinson, Martinez, Fox-Young, Coakley, and the RPNM argue that they should be allowed to intervene pursuant to rule 24(b), which provides for permissive intervention.  See Robinson's Motion ¶ 5, at 2; Memorandum in Support of Motion to Intervene at 10-11, filed August 18, 2008 (Doc. 28)("Memo. in Support").  Because of the prejudice intervention at this time would cause to the Plaintiff and because the circumstances of the case warrant that additional parties be kept to a minimum, the Court will not permit the proposed 24(b) interventions, at least at this preliminary injunction stage.

Permissive intervention, as relevant here, is allowed where the would-be intervenors have claims or defenses that share a common question of law or fact with the main action.  See Fed. R. Civ. P. 24(b)(1)(B).  Once the threshold requirement of a common question is met, the decision to allow or deny permissive intervention lies within the discretion of the district court.  See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d at 1427.  While the Court is not able to consider any prejudice or delay that the actual intervention would cause when evaluating the timeliness of a motion to intervene, the Court is not only able to consider them in the exercise of its discretion under rule 24(b), but is required to.  F. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").  See DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d at 943 (noting that district courts required to consider undue prejudice or delay in deciding whether to grant permissive intervention).'

In this case, intervention is likely to lead to delays that could prejudice the Plaintiff's case and the Defendant.  Intervening parties are entitled to all the rights and responsibilities of original

parties to litigation, including the right to present evidence and to have their schedules considered in setting  hearing dates.  The proposed intervenors have indicated their intention to exercise these rights if they enter the case.  <u>See</u> August 19 Tr. at 14-15 (Rogers), 34 (Robinson).

This case is very time sensitive, as the deadline for book-closing preceding the general election is fast approaching.  <u>See</u> Reply at 3.  With less than one month until the book-closing, the Court believes that it is important to avoid any unnecessary delays.  Both sides may want to appeal an adverse judgment; if the Court grants the injunction, the Plaintiffs want as much time as possible to register voters before October 4, 2008.  The proposed intervenors were aware of this case and their interest in it several weeks before they moved to intervene.  While the Court has held the motions to intervene to be timely, the lateness of the motion, and the resulting nearness to the book-closing date, weigh against allowing permissive intervention.

Given that the Court finds that the Defendant is adequately representing any interests the prospective intervenors have in the litigation, it would be inappropriate to allow them to intervene permissively, with the delays to the resolution of the case such intervention would entail.  <u>See</u> <u>City of Stilwell, Oklahoma v. Ozarks Rural Elec. Co-op. Corp.</u>, 79 F.3d at 1043 (finding no abuse of discretion in district court denying permissive intervention where other parties adequately represent proposed intervenors' interest and intervention would cause undue delay and prejudice). Additionally, while the proposed intervenors might be able to help develop the factual and legal issues in this case, the Court does not believe that such assistance will outweigh the detriment of increased delay.  While a Court always needs as much evidence on the record as possible, it has to balance that need with the need for closure and the need to promptly rule on a motion for preliminary injunction, especially in a context where one month of voter-registration remains and emergency appeals by both sides may be sought.  The totality of the circumstances in this case favor

denying permissive intervention.

Finally, the Court must consider fairness.  If it lets one voter, or one legislator who voted for the bill, intervene, it may need to let others similarly situated intervene.  At some point, the Court must cut off the evidence and make the best decision it can.  Because of the need to rule on the Plaintiffs' request for a preliminary injunction as soon as possible, the Court will not grant Robinson, Martinez, Fox-Young, Coakley, or the RPNM permission to intervene under rule 24(b).

**IT IS ORDERED** that Shannon Robinson's Motion to Intervene is denied, and Nazarena Martinez, Justine Fox-Young, Rhoda Coakley, and the Republican Party of New Mexico's Motion to Intervene is denied, without prejudice as to refiling by Justine Fox-Young, Rhoda Coakley, and the Republican Party of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Wendy R. Weiser
Myrna Perez
Brennan Center for Justice
  at NYU School of Law
New York, New York

-- and --

Daniel F. Kolb
Anna Thea Bridge
Sharon Katz
David J. Lisson
Rosanna Garza Lipscomb
Davis Polk & Wardwell
New York, New York

-- and --

Neal A. Potischman
Davis Polk & Wardwell
Menlo Park, California

-- and –

John W. Boyd
David H. Urias
Freedman, Boyd, Hollander,
  Goldberg & Ives, P.A.
Albuquerque, New Mexico

   *Attorneys for the Plaintiffs*

Scott Fuqua
  Assistant Attorney General
Litigation Division
Office of the New Mexico Attorney General
Santa Fe, New Mexico

   *Attorneys for the Defendant*

Shannon Robinson
Shannon Robinson, Attorney at Law
Albuquerque, New Mexico

   *Attorney for Proposed Defendant in Intervention*
    *Shannon Robinson*

R. Jason Bowles
B.J. Crow
Bowles & Crow
Albuquerque, New Mexico

-- and –

Patrick J. Rogers
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

   *Attorneys for Proposed Defendants in Intervention*
    *Nazarena Martinez, Justine Fox-Young, Rhoda*
    *Coakley, and the Republican Party of New Mexico*