## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AMERICAN ASSOCIATION OF PEOPLE
WITH DISABILITIES, FEDERATION OF
AMERICAN WOMEN'S CLUBS
OVERSEAS, INC., NEW MEXICO PUBLIC
INTEREST RESEARCH GROUP
EDUCATION FUND, and SOUTHWEST
ORGANIZING PROJECT,

        Plaintiffs,

vs.                                                                          No. CIV 08-0702 JB/WDS

MARY HERRERA, in her capacity as
Secretary of State,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** comes before the Court on the Plaintiffs' Motion for Reconsideration of

the Court's February 5, 2010 Order Granting in Part Defendant's Motion to Dismiss, filed

March 5, 2010 (Doc. 95). The Court held a hearing on May 21, 2010. The primary issue is whether,

under rule 59(e) of the Federal Rules of Civil Procedure, the Court should reconsider its dismissal

of Plaintiffs American Association of People with Disabilities, Federation of Women's Clubs

Overseas, Inc., New Mexico Public Interest Research Group Education Fund, and Southwest

Organizing Project's void-for-vagueness challenge to New Mexico's third-party voter-registration

law, NMSA 1978, § 1-4-49. Because the Plaintiffs are presenting new information, pursuant to

rule 59(e), the Court will grant the motion for reconsideration. Upon consideration of the new

information, however, the Court concludes that the evidence does not alter its conclusion, in its

February 5, 2010 Memorandum Opinion and Order (Doc. 91)("MOO"), that NMSA 1978, § 1-4-49

is not unconstitutionally void. The Court, therefore, will not alter or amend its previous decision

dismissing Count II of the Plaintiffs' Amended Complaint.

## PROCEDURAL BACKGROUND

In 2005, the New Mexico Legislature responded to various well-publicized incidents of voter registration fraud by passing a third-party voter registration statute, NMSA 1978, § 1-4-49. The statute requires that members of an organization who register or assist others in registering to vote must first themselves register as third-party voter registration agents with the New Mexico Secretary of State. Specifically, § 1-4-49A provides:

> Registration agents who either register or assist persons to register to vote on behalf of an organization that is not a state or federal agency shall register with the secretary of state, and the organization shall register and provide the secretary of state with:
>
> > (1) the names of the officers of the organization and the name and permanent address of the organization;
> >
> > (2) the names, permanent addresses, temporary addresses, if any, and dates of birth of each person registering persons to vote in the state on behalf of the organization; and
> >
> > (3) a sworn statement from each registration agent employed by or volunteering for the organization stating that the agent will obey all state laws and rules regarding the registration of voters on a form that gives notice of the criminal penalties for false registration.

NMSA 1978, § 1-4-49A. The statute also requires third-party registration agents either to mail or to personally deliver completed voter registration forms within forty-eight hours of completion. Specifically, § 1-4-49B provides:

> Organizations employing registration agents or using volunteer registration agents shall deliver or mail a certificate of registration to the secretary of state or county clerk within forty-eight hours of its completion by the person registering to vote or deliver it the next business day if the appropriate office is closed for that forty-eight hour period.

NMSA 1978, § 1-4-49B.

In their Amended Complaint for Declaratory and Injunctive Relief, filed August 14, 2009

(Doc. 75), the Plaintiffs challenge the legality of § 1-4-49.  On August 21, 2009, the Secretary moved to dismiss all of the Plaintiffs' claims.  See Motion to Dismiss, filed August 21, 2009 (Doc. 78).  In its MOO, the Court denied the Secretary's motion to dismiss the Plaintiffs' as-applied claims under the First Amendment of the United States Constitution and Article II, Section 17 of the New Mexico Constitution, and granted the motion to dismiss the Plaintiffs' claim for violation of the National Voter Registration Act, 42 U.S.C. §§ 1973gg-1 to 1973gg-10 ("NVRA"), their procedural due-process claim, their state non-delegation claim, their void for vagueness claim, their overbreadth claim, and their claim under Article II, Section 8 of the New Mexico Constitution.  The Court relied, as it must, only on the allegations in the Amended Complaint.  In a footnote to the Court's dismissal of Count II -- the void-for-vagueness claim -- the Court stated:

> In the Plaintiffs' brief, they urge the Court to deny the motion to dismiss on the facial claim because they assert the factual development of the as-applied First-Amendment claims "might shed additional light on the scope of the challenged law (thus affecting the overbreadth analysis), as well as the confusion in applying it (thus affecting the vagueness inquiry)."  Pl. Opp. at 23 n. 12.  It may be that factual discovery will reveal facts that the Plaintiffs can use to strengthen their facial challenge, but at present, they have apparently offered all they have as allegations in their Amended Complaint.  The State is entitled to a ruling as a matter of law when they move for it if the allegations do not state a claim for which relief can be granted.  If, at some later point, the Plaintiffs uncover facts that casts the Court's legal decision on the facial challenge into doubt, the Plaintiffs can move the Court to reconsider its legal ruling based on the subsequently uncovered facts.

MOO at 55 n.9.

In response to the Court's footnote, the Plaintiffs filed a motion for reconsideration of the Court's dismissal of the facial vagueness challenge pursuant to rule 59(e).  They also filed a memorandum in support of their motion and several exhibits.  See Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Reconsideration of the Court's February 5, 2010 Order Granting in Part Defendant's Motion to Dismiss, filed March 5, 2010 (Doc. 96)

("Plaintiffs' Memo."). The Plaintiffs limit their motion to reconsider to the vagueness claims that the Court dismissed. The Plaintiffs argue that the Court should, based on newly obtained evidence, reconsider its dismissal of their claim that the law is unconstitutionally vague. The Plaintiffs have conducted depositions with at least ten New Mexico election officials -- five County Clerk officials and five senior employees in the New Mexico Secretary of State's office. As of March 5, 2010, the Plaintiffs have conducted depositions of the following officials: (i) Mario Jimenez, Doña Ana County Chief Deputy Clerk; (ii) Douglas Shaw, Chaves County Chief Deputy Clerk; (iii) Maggie Toulouse Oliver, Bernalillo County Clerk; (iv) Marie Elena Rodela, Rio Arriba County Bureau of Elections Chief; (v) Denise Lamb, Santa Fe County Chief Deputy Clerk; (vi) Don Francisco Trujillo II, Deputy Secretary of State; (vii) Kelli Fulgenzi, Administrator, Bureau of Elections; (viii) Larry Dominguez, Elections Coordinator for the New Mexico Secretary of State; (ix) Marry Herrera, Secretary of State; and (x) Manuel Vildasol, Administrator. <u>See</u> Plaintiffs' Memo. at 2 n.2 & 3. The Plaintiffs argue that the depositions with these individuals have shown that there is widespread confusion among the officials charged with administering the third-party voter registration statute, especially regarding: (i) what constitutes assisting persons to register; and (ii) when the statute's forty-eight-hour rule for turning in voter registration forms applies. <u>See</u> Plaintiffs' Memo. at 2. The Plaintiffs argue that NMSA 1979, § 1-4-49's meaning is not plain, and that the Court should amend its order and find the statute void for vagueness. They contend that the inconsistent responses of election officials indicates that "assist" in § 1-4-49 does not have a plain meaning. Plaintiffs' Memo. at 9. They also argue that there are no consistent answers among officials on when the forty-eight-hour rule's time begins to run. <u>See</u> Plaintiffs' Memo. at 9. The Plaintiffs argue that these confusions invite arbitrary enforcement of § 1-4-49. <u>See</u> Plaintiffs' Memo. at 10-13.

In response, Defendant Secretary of State Mary Herrera argues that there is no reason for the Court to reconsider its ruling.  <u>See</u> Response to Plaintiffs' Motion for Reconsideration of the Court's February 5, 2010 Order, filed March 22, 2010 (Doc. 99).  First, the Secretary argues that the Plaintiffs never contended in their motion to dismiss that the forty-eight-hour requirement is unconstitutionally vague and contends that therefore the Court did not consider a vagueness challenge to the forty-eight-hour requirement.  <u>See</u> Response at 2.  Second, the Secretary argues that the Plaintiffs overstate the importance of the interpretations of the County Clerks and of members of the Secretary of State's office.  <u>See</u> Response at 3.  The Secretary argues that, although the quantum of assistance that triggers applicability of § 1-4-49 is not specified in the statute, it is apparent from the remaining provisions of the statute what the legislature contemplated when passing it: (i) providing a means for tracking voter-registration forms turned in to third-party registration agents to prevent voter fraud; and (ii) ensuring that prospective voters are registered by requiring agents to promptly provide completed voter registration forms to the appropriate official. <u>See</u> Response at 5-6.

At the hearing, Charles Borden, the Plaintiffs' attorney, argued that, although the new information the Plaintiffs have obtained is information they could use to seek leave to amend and supplement their allegations as to the vagueness of § 1-4-49, a rule 59(e) motion is broad enough to allow the Court to decide -- if there were an amended complaint based on new evidence -- whether it would reconsider its previous decision.  <u>See</u> Transcript of Hearing at 5:21-6:17 (taken May 21, 2010)("Tr.")(Borden).[1]  Mr. Borden argued that the Court should look at their motion as if they had filed an amended complaint, and to reassess the decision to dismiss, as a

_____

[1] The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

matter of law, the Plaintiffs' void-for-vagueness challenge.  <u>See</u> Tr. at 6:8-17 (Borden).  Mr. Borden emphasized that the void-for-vagueness issue is still a question of law -- not fact -- and that the evidence which the Plaintiffs present is meant to illustrate allegations they could make.  <u>See</u> Tr. at 7:23-8:4 (Borden).  The Court inquired whether Mr. Borden wished for the void-for-vagueness claim to go to summary judgment and Mr. Borden answered no, as he does not believe that there are factual issues in dispute necessitating summary judgment or a trial.  <u>See</u> Tr. at 9:25-10:8 (Borden).

Scott Fuqua, Assistant New Mexico Attorney General and the Secretary's attorney, argued that he believes the Court has everything it needs in front of it to make an affirmative ruling whether § 1-4-49 is void for vagueness, and he stated he has no objection to the Court treating the motion to reconsider as one for summary judgment.  <u>See</u> Tr. at 42:2-10 (Fuqua).  He argued that, in most cases, courts look to how a statute has been used in prosecuting individuals to inform the interpretation of a statute in a void-for-vagueness analysis.  <u>See</u> Tr. at 40:16-23 (Fuqua).  In this case, there are no such prosecutions to which to look, because no one has been prosecuted for a violation of § 1-4-49, and thus any statements the Plaintiffs have presented are based on only hypothetical situations.  <u>See</u> Tr. at 40:16-41:19 (Fuqua).  Mr. Borden stated that he has no problem with the Court taking judicial notice that no prosecutions under § 1-4-49 have occurred.  <u>See</u> Tr. at 61:25-62:4 (Borden).

## LAW REGARDING MOTIONS TO RECONSIDER

"A motion under Rule 59(e) is warranted when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice."  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  A district court has considerable discretion in ruling on a motion to reconsider.  <u>See</u> <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1324 (10th Cir. 1997).  A rule 59(e)

motion is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised in prior briefing.  See Servants of the Paraclete v. Does, 204 F.3d at 1012.  "[A]fter a motion to dismiss has been granted, a court may only consider a motion to amend a complaint if the case is reopened pursuant to a motion under Rule 59(e) or Rule 60(b)."  Glenn v. First Nat'l Bank in Grand Junction, 868 F.2d 368, 371 (10th Cir. 1989).

## LAW REGARDING A STATUTE BEING VOID FOR VAGUENESS

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort."  Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998)(quotation marks omitted). "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  United States v. Williams, 553 U.S. 285, 304 (2008).  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v. Colorado, 530 U.S. 703, 732 (2000)(citing Chicago v. Morales, 527 U.S. 41, 56-57 (1999)).  See United States v. Williams, 553 U.S. at 304 (describing a vague statute as failing "to provide a person of ordinary intelligence fair notice of what is prohibited, or [as being] so standardless that it authorizes or encourages seriously discriminatory enforcement."); Mini Spas, Inc. v. South Salt Lake City Corp., 810 F.2d 939, 942 (10th Cir. 1987)("A statute violates due process if it is so vague that a person of common intelligence cannot discern what conduct is prohibited, required, or tolerated.").  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  United States v. Williams, 553 U.S. at 306.  The Supreme Court of the United States has noted that "perfect clarity and precise guidance

have never been required even of regulations that restrict expressive activity." United States v. Williams, 553 U.S. at 304 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).

"A federal court evaluating a vagueness challenge to a state law must read the statute as it is interpreted by the state's highest court." United States v. Gaudreau, 860 F.2d 357, 361 (10th Cir. 1988)(citation omitted). In evaluating the constitutional validity of state statutes, the Supreme Court has stated that "every presumption is to be indulged in favor of the validity of a statute[.]" Mugler v. Kansas, 123 U.S. 623, 661 (1887). The Supreme Court of New Mexico, in discussing the presumption of constitutional validity that attaches to acts of the New Mexico legislature, has stated:

> A strong presumption of constitutionality underlies each legislative enactment, and we will not void a statute where a constitutional construction is reasonably supported by the statutory language. See State v. Fleming, 140 N.M. 797, 149 P.3d 113 (2006); Ortiz v. Taxation & Revenue Dep't, 124 N.M. 677, 954 P.2d 109 (1998). In construing a regulation or statute, "this Court has a duty to affirm the legislation's validity and constitutionality if reasonably possible." Old Abe Co. v. N.M. Mining Comm'n, 121 N.M. 83, 96-97, 908 P.2d 776, 789-90 (Ct. App. 1995). A statute is only unconstitutional "if it is so vague that persons of common intelligence must guess at its meaning and would differ in its application." City of Albuquerque v. Sanchez, 113 N.M. 721, 727, 832 P.2d 412, 418 (Ct. App. 1992). However, "absolute or mathematical certainty is not required in the framing of a statute." State ex rel. Bliss v. Dority, 55 N.M. 12, 29, 225 P.2d 1007, 1017 (1950).

Bishop v. Evangelical Good Samaritan Soc'y, 146 N.M. 473, 478-79, 212 P.3d 361, 366-67 (2009). In some cases, however, the Supreme Court has noted that it could not remedy a constitutionally imprecise state statute. See Hynes v. Mayor & Council of Oradell, 425 U.S. 610, 622 (1976)("Even assuming that a more explicit limiting interpretation of the ordinance could remedy the flaws we have pointed out -- a matter on which we intimate no view -- we are without power to remedy the defects by giving the ordinance constitutionally precise content.").

In determining whether a federal statute is unconstitutionally vague, the Supreme Court has

also noted that a strong presumption of validity attaches to Congress' enactments and has consistently construed a challenged statute narrowly rather than condemn it as unconstitutionally vague.  See Skilling v. United States, No. 08-1394, 2010 U.S. LEXIS 5259, at *91 (June 24, 2010) ("It has long been our practice, however, before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction."); United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32 (1963)(stressing, in response to a vagueness challenge, "[t]he strong presumptive validity that attaches to an Act of Congress").  In Skilling v. United States, the Supreme Court looked to Congress' intent in passing the honest-services doctrine, and limited the construction of the honest-services doctrine to reach bribes and kickbacks, as Congress intended, stating:

> [T]here is no doubt that Congress intended § 1346 to reach at least bribes and kickbacks.  Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine.  To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-McNally case law.

Skilling v. United States, 2010 U.S. LEXIS 5259, at **96-97.

In Grayned v. City of Rockford, 408 U.S. 104 (1972), the Supreme Court stated that, when assessing whether a statute is vague, it looks to "the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it."  408 U.S. at 110 (internal quotations omitted).  For example, in Minority TV Project Inc. v. FCC, No. C-06-02699, 2007 U.S. Dist. LEXIS 95498 (N.D. Cal. Dec. 21, 2007), the Honorable Elizabeth D. Laporte, United States District Judge for the Northern District of California, found it premature to dismiss a facial challenge of void for vagueness until the plaintiffs introduced evidence of the Federal

Communication Commission's ("FCC") enforcement decisions applying the statute in question -- a prohibition against certain paid promotional advertisements.  See 2007 U.S. Dist. LEXIS 95498, at **37-38.  When the plaintiffs submitted evidence of the FCC's enforcement, Judge Laporte found the statute was not unconstitutionally vague, explaining:

> Assuming that the Court may "perhaps to some degree" consider the FCC's interpretation of the statute in evaluating whether the statute is vague, see Grayned v. City of Rockford, 408 U.S. 104, 110 (1972), as Plaintiff urges the Court to do, arguable inconsistencies in a statute's application in a handful of cases do not condemn a statute.  If such limited inconsistencies rendered statutes unconstitutionally vague, the majority of statutes would probably not survive a vagueness challenge.  Rather, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'"  California Teachers Ass'n, 271 F.3d at 1151 (quoting Hill v. Colorado, 530 U.S. 703, 733 (2000)(rejecting vagueness challenge)(quotation marks omitted)).  As in Grayned, the words of the statute here are marked by "flexibility and reasonable breadth, rather than meticulous specificity," and "it is clear what the ordinance as a whole prohibits."  408 U.S. at 110 (quoting Esteban v. Central Missouri State College, 415 F.2d 1077, 1088 (8th Cir. 1969)).

Minority TV Project Inc. v. FCC, 649 F. Supp. 2d 1025, 1047 (N.D. Cal. 2009).  The Supreme Court in Grayned v. City of Rockford noted: "Condemned to the use of words, we can never expect mathematical certainty from our language."  408 U.S. at 110.  The Supreme Court rejected a facial vagueness challenge to an ordinance that implicated First Amendment rights and prohibited certain demonstrations "adjacent" to schools that "disturb[] or tend[] to disturb the peace or good order of such school session or class thereof," finding that it was "clear what the ordinance as a whole prohibits," even though the statute at issue did not specify the prohibited quantum of disturbance. 408 U.S. at 109-11 ("Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted.").

Numerous statutes have withstood facial vagueness challenges even though they contained

arguably ambiguous language.  See, e.g., Hill v. Colorado, 530 U.S. at 732 (rejecting vagueness

challenge to ordinance making it a crime to "approach" another person, without that person's

"consent," to engage in "oral protest, education, or counseling" within specified distance of

health-care facility); Boos v. Barry, 485 U.S. 312, 332 (1988)(rejecting vagueness challenge to

ordinance interpreted as regulating conduct near foreign embassies "when the police reasonably

believe that a threat to the security or peace of the embassy is present"); Cameron v. Johnson, 390

U.S. 611, 616 (1968)(rejecting vagueness challenge to ordinance prohibiting protests that

"unreasonably interfere" with access to public buildings); Kovacs v. Cooper, 336 U.S. 77, 79

(1949)(rejecting vagueness challenge to sound ordinance forbidding "loud and raucous" sound

amplification).

## ANALYSIS

The Court will reconsider its vagueness ruling in its earlier MOO.  The Court will also

consider a vagueness issue it did not consider in its MOO.  In the end, however, the Court concludes

again that New Mexico's third-party voter registration statute is not unconstitutionally vague.

## I.      THE COURT WILL RECONSIDER ITS MOO.

In its MOO, the Court dismissed Count II of the Plaintiffs' Amended Complaint.  Count II

of the Amended Complaint alleges that NMSA 1978, § 1-4-19 violates the First and Fourteenth

Amendments because it is void for vagueness, and specifically alleges:

> The challenged law, in its application to any person who "assist[s] persons to
> register," is unconstitutionally vague because it does not provide an individual of
> ordinary intelligence any meaningful guidance as to what activities are subject to the
> burdensome pre-registration and training requirements, or the threat of civil and
> criminal punishment, and [] it encourages arbitrary and discriminatory enforcement.

Amended Complaint ¶ 126, at 40, filed August 14, 2009 (Doc. 75).  As a matter of law, the Court

found that NMSA 1978, § 1-4-49 is not unconstitutionally vague and thus granted the Secretary's

motion to dismiss Count II.

**A.   THE COURT WILL GRANT THE MOTION TO RECONSIDER ITS RULING ON WHETHER "ASSIST" IS UNCONSTITUTIONALLY VAGUE.**

Rule 59(e) permits a party to move for reconsideration when there is newly discovered evidence which was previously unavailable.  See Servants of Paraclete v. Does, 204 F.3d at 1012 (10th Cir. 2000); Fed. R. Civ. P. 59(e).  Moreover, the Court contemplated a motion for reconsideration when it wrote footnote 9 in its MOO.  The Plaintiffs' motion for reconsideration argues that new evidence, obtained through deposing election officials and members of the Secretary's office, demonstrates that § 1-4-49 is constitutionally void because (i) it does not provide fair notice of what conduct constitutes "assist[ing] persons to register to vote" and (ii) it does not provide fair notice of what triggers the forty-eight-hour deadline for turning in a voter registration form.  See Plaintiffs' Memo. at 6.

In the Court's MOO, it found that § 1-4-49 is not unconstitutionally vague on its face.  The Court addressed the Plaintiffs' allegation in their Amended Complaint that the statute is unconstitutionally vague in its application to any person who, on behalf of an organization, registers or assists persons to register.  Because the Plaintiffs have presented new evidence for the Court to consider to determine whether § 1-4-49 is unconstitutionally vague in its application of the term "assist," they have satisfied rule 59(e)'s requirement.  The Court will thus grant the motion to reconsider its ruling whether the term "assist" makes § 1-4-49 unconstitutionally vague.

**B.   THE COURT CANNOT RECONSIDER WHETHER THE FORTY-EIGHT-HOUR REQUIREMENT IS UNCONSTITUTIONALLY VAGUE, BUT WILL CONSIDER FOR THE FIRST TIME WHETHER IT RENDERS § 1-4-49 UNCONSTITUTIONALLY VAGUE.**

The Secretary argues that the Court should not address the Plaintiffs' second argument that the forty-eight-hour requirement is unconstitutionally vague because they did not make such

-12-

argument previously.  As the Court recognized in its MOO, the Plaintiffs argued at the hearing on the motion to dismiss that the forty-eight-hour requirement, in addition to the phrase "assist persons to register," render the statute vague.  See MOO at 8 ("The Plaintiffs also argue that it is vague how they are supposed to comply with the statute's forty-eight-hour-delivery requirement."); Transcript of Motion to Dismiss Hearing at 76:6-11 (taken Oct. 13, 2009)[2]("BORDEN: I think the other issue which we raised about -- you know, a concern about, from a vagueness perspective, is the issue relating to whether or not compliance with the 48-hour limit can be done through -- requires actual delivery of the form to a government agent or whether simply placing the form in the mail within a 48-hour window qualifies.").  In the procedural overview of the parties' arguments, the Court cited both the Plaintiffs' opposition briefing and the transcript of the hearing for the argument that the forty-eight-hour requirement is vague; however, upon closer inspection, the Plaintiffs argued in their opposition briefing that the forty-eight-hour requirement is unconstitutionally overbroad, not that it is unconstitutionally vague.  See Opposition to Defendant's Motion to Dismiss at 31, filed October 16, 2009 (Doc. 81)("Second, the challenged law is overbroad . . . .  And the challenged law, as a textual matter, subjects individuals to the forty-eight hour requirement when they merely assist a prospective voter with filling out a form but do not take custody of the completed form.").  The only argument in the opposition to the motion to dismiss addressing the statute's vagueness is that the application of "assist" fails to provide an individual of ordinary intelligence any meaningful guidance as to what activities are subject to the statute.  Opposition to Defendant's Motion to Dismiss at 30.  The Plaintiffs, in their motion for reconsideration, do not request the Court to reconsider its decision that § 1-4-49 is unconstitutionally overbroad.  See Tr. at 4:1-3

_____

[2] The Court's citation to the October 13, 2009 hearing refers to the court reporter's final transcript.  See Transcript of Motion Hearing, filed March 9, 2010 (Doc. 98).

("BORDEN: Vagueness and overbreadth often go hand in hand.  We brought both of them in this case, but we're only filing for reconsideration as to vagueness.").

The Plaintiffs' Amended Complaint, moreover, does not allege that the forty-eight-hour requirement is unconstitutionally vague.  Count II of the Plaintiffs' Amended Complaint only alleges that the term "assist" renders § 1-4-49 unconstitutionally vague.  The Amended Complaint alleges that the forty-eight-hour requirement "has substantially burdened Plaintiffs' voter-registration activities by dramatically increasing their risk and cost."  Amended Complaint ¶ 87, at 29.  It also alleges that the forty-eight-hour requirement violates the NVRA.  <u>See</u> Amended Complaint ¶ 145, at 44.  Neither the Amended Complaint, nor the Opposition to the Motion to Dismiss alleges or argues that the statute is not clear when the clock begins to run on the forty-eight-hour requirement.  Instead, the Amended Complaint discusses the alleged burden the forty-eight hour requirement places upon third-party voter-registration agents:

> And if a volunteer assists with the completion of a registration form, she becomes responsible for delivering or mailing that form to the Secretary of State or County Clerk within a mere forty-eight hours -- regardless of whether the potential voter has possession of the form and wishes to deliver the form for herself.

Amended Complaint ¶ 4, at 2.  <u>See</u> Amended Complaint ¶ 61, at 22 ("Although voter-registration forms were not always submitted within forty-eight hours of completion, voter-registration forms have always been submitted by [SouthWest Organizing Project] before the voter-registration deadline."); Amended Complaint ¶ 90, at 30 ("Complying with the forty-eight-hour return requirement cuts into the organization's other activities, such as training new volunteers or participating in phone banks.").  There is no indication from the Amended Complaint that the Plaintiffs allege the forty-eight hour requirement is vague.  When deciding the Secretary's motion to dismiss, the Court considered the allegations in the Amended Complaint to decide whether, as

a matter of law, they stated a claim upon which relief could be granted.  Based on the allegations in the Amended Complaint -- that the "assist" requirement in § 1-4-49 is unconstitutionally vague -- the Court dismissed Count II.

The Tenth Circuit has stated:

> After a motion to dismiss has been granted, plaintiffs must first reopen the case pursuant to a motion under Rule 59(e) or Rule 60(b) and then file a motion under Rule 15, and properly apply to the court for leave to amend by means of a motion which in turn complies with Rule 7.

Glenn v. First Nat'l Bank, 868 F.2d at 371.  The Plaintiffs have moved for reconsideration under rule 59(e), and the Court will grant their motion to reconsider.  The Plaintiffs, however, are also asking the Court to reconsider a decision the Court did not make and did not need to decide in the MOO.  The Court did not expressly state in its opinion that it need not address Mr. Borden's new argument, raised for the first time at the hearing, that the forty-eight hour requirement is also unconstitutionally vague.  The Court did not address the new argument because such allegation was not made in the Amended Complaint -- either explicitly in Count II or implicitly through the paragraphs incorporated by reference in Count II.  Nor was the forty-eight-hour requirement characterized as vague in the Opposition to the Motion to Dismiss.  The Court is unsure it can reconsider an argument that it did not consider in the motion to dismiss.[3]  The Plaintiffs, however,

---

[3]  The Court recognizes, however, that a vagueness challenge and an overbreadth challenge often go hand-in-hand.  The Supreme Court in Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489 (1982), noted that "the vagueness of a law affects overbreadth analysis," because "ambiguous meanings cause citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden area were clearly marked."  455 U.S. at 495 n.6 (internal quotation and citation omitted).  Nevertheless, the overbreadth doctrine, though related to vagueness, operates in a different manner and requires a different analysis.  The overbreadth doctrine applies only when First Amendment rights are in question and invalidates a statute if a substantial amount of protected speech is prohibited. See United States v. Williams, 553 U.S. at 292 ("According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech.").  Thus, the Court addressed the Plaintiffs' vagueness challenge separate from

may move now for a rule 15 motion to amend to allege that the forty-eight-hour requirement is unconstitutionally vague. Because the void for vagueness challenge is a question of law, however, the Plaintiffs ask the Court to assume that they have amended their allegations and rule on whether those assumed amended allegations would support a facial challenge for unconstitutional vagueness. The Secretary does not object to the Court considering the evidence before it and making a legal ruling based upon the information in the parties' briefings. The Court, therefore, will consider the Plaintiffs argument that the forty-eight hour requirement also makes § 1-4-49 unconstitutionally void for vagueness.

## II.   THE EVIDENCE THAT THE PLAINTIFFS OFFER DOES NOT CAUSE THE COURT TO CHANGE ITS CONCLUSION THAT NMSA 1978, § 1-4-49 IS NOT UNCONSTITUTIONALLY VAGUE.

When considering the motion to dismiss, both the Plaintiffs and the Secretary agreed that the determination of vagueness is legal and not factual. See MOO at 55. The Plaintiffs ask the Court to amend its earlier dismissal of Count II in light of new evidence it obtained in depositions. Because the new evidence does not convince the Court that it was incorrect in its determination that § 1-4-49 is not unconstitutionally vague, the Court will not amend its earlier decision.

### A.   THE PHRASE "ASSIST PERSONS TO REGISTER" DOES NOT RENDER § 1-4-49 VOID FOR VAGUENESS.

The Plaintiffs have presented the Court with statements that various election officials and members of the Secretary's office made in depositions, and argue these statements demonstrate that § 1-4-49 is void for vagueness. Some election officials stated that they believe merely handing out election forms does not constitute assistance. See Plaintiffs' Memo. at 7. Some stated that merely handing out forms constitutes assistance. See Plaintiffs' Memo. at 7. Some officials stated that

their overbreadth challenge in deciding the motion to dismiss.

§ 1-4-49 applies when a third-party registration agent solicits someone to register, but not when a potential voter solicits help from a third-party agent, and others stated the law applies in both circumstances.  See Plaintiffs' Memo. at 8.[4]

When the New Mexico Legislature passed § 1-4-49 in 2005, its purpose was to address voter registration fraud by holding accountable third-party registration agents for their registration activities.  See NMSA 1978, § 1-4-49; Motion to Dismiss at 4-5.  The issue before the Court in the motion to dismiss the void-for-vagueness challenge and now on reconsideration is not what "assist persons to register" means in the abstract; it is what it means against the backdrop of the Legislature's announced purpose in passing § 1-4-49 -- to prevent voter fraud and to ensure prospective voters are ultimately registered when they hand over their registration forms to third-party agents.  See Grayned v. City of Rockford, 408 U.S. at 112 ("Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted.").  The Court in its MOO explained the scope and meaning of "assist" in § 1-4-49, stating:

> To "assist" a voter is a concept of plain import and while the Plaintiffs may speculate about possible misinterpretations of the term, the plain meaning of the statute is clear -- assisting a prospective voter means something more than handing over a voter registration form and walking away.  The word contemplates something more substantial; most importantly, taking possession of the completed form and ensuring

---

[4]  The statements in the depositions are often given based on an attorney's hypothetical question about voters, and not on situations that they have previously encountered.  In other words, there is no indication that the deponents had previously thought about the question and come to a conclusion before the depositions.  In Fulgenzi's deposition, for example, she is asked: "So, then would you say that a voter registration agent who simply provides a form to a voter is not assisting that voter?"  Deposition of Kelli Fulgenzi at 135:7-9 (taken Jan. 11, 2010), filed March 5, 2010 (Doc. 96-3) ("Fulgenzi Depo.").  She responds: "I think they enfranchise them by giving them a form, but I don't think that -- if the voter takes the form, it takes it out of their possession. It removes it from their possession.  There's no way that they could actually turn that form in."  Fulgenzi Depo. at 135:10-14.

that it is handled properly.

MOO at 58.  The New Mexico Administrative Code provisions regarding third-party registration agents further support the Court's plain meaning construction of the statute and the meaning of the term "assist."  According to the New Mexico Administrative Code: "'Third-party registration agent' means any other individual who either registers or assists another person in completion of a certificate of voter registration on behalf of an organization that is not a state, county or federal agency."  1.10.25.7(D) NMAC.  To assist a voter as a registration agent means more than handing over a voter registration form and walking away; it means to assist another person in completion of a voter registration application.  Such action, on behalf of an organization, makes one a registration agent under the provisions of § 1-4-49.

The deposition testimony that the Plaintiffs present does not change the Court's conclusion. As the Supreme Court has stated, "we are condemned to the use of words, we can never expect mathematical certainty from our language."  Grayned v. City of Rockford, 408 U.S. at 110.  Section 1-4-49 puts into language as plain as possible its intention to regulate third-party voter registration agents who may be entrusted with completed voter registration forms.  The third-party registration law's purpose is to ensure that, if a third-party registration agent gives someone a voter registration form, and the form is returned to the third-party agent, the form will make its way back to the proper official and the prospective voter will be registered.  The term "assist" must be understood within that purpose.  Thus, while the officials that the Plaintiffs deposed gave inconsistent answers on the scope of assisting, enforcement of the statute's purpose only makes sense in terms of what the Court previously stated -- "assist" contemplates something more substantial that handing over a form and walking away.  See Grayned v. City of Rockford, 408 U.S. at 112 (noting that "[a]lthough the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's

announced purpose that the measure is whether normal school activity has been or is about to be disrupted."); VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 188 (2d Cir. 2010)("In addition to the plain meaning of the ordinance's wording . . . the ordinance's stated purpose -- preventing the adverse secondary effects associated with the presence of [a sexually-oriented business] -- provides additional clarity and guidance.").  The implementing regulations help clarify that a person who "assists persons to register to vote on behalf of an organization," § 1-4-49, is one who "assists another person in completion of a certificate of voter registration on behalf of an organization," 1.10.25.7(D).[5]  The officials' opinions on hypothetical situations in which they think the statute might apply does not dilute § 1-4-49's plain meaning and intended application.  See Hill v. Colorado, 530 U.S. at 733 (stating that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'")(quoting United States v. Raines, 362 U.S. 17, 23 (1960)); United States v. Williams, 553 U.S. at 304 (stating that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."); Cal. Teachers Ass'n v. Bd of Educ., 271 F.3d 1141, 1151 (9th Cir. 2001)(stating that "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes in the vast majority of its intended applications.")(citing Hill v. Colorado, 530 U.S. at 733).  Moreover, the officials whom the Plaintiffs deposed may be tasked with implementing the third-party

---

[5] The statute requires registration agents "who either register or assist persons to register to vote on behalf of an organization" to register with the Secretary of State. § 1-4-49A. A person who assists another person in completing a voter registration application on behalf of an organization may not, in all circumstances, be the individual who takes possession of the completed form. The Court notes that the statute does not require the person who assists persons to register comply with the forty-eight hour requirement; it requires the organization to return completed forms within forty-eight hours. See § 1-4-49C.

-19-

registration process, but it is the New Mexico Attorney General and the district attorneys who enforce the statute.  Section 1-4-49E of the statute provides:

> If the secretary of state reasonably believes that a person committed a violation of the provisions of this section, the secretary of state shall refer the matter to the attorney general or a district attorney for enforcement.  The attorney general or district attorney may institute a civil action in district court for a violation of the provisions of this section or to prevent a violation of the provisions of this section.

NMSA 1978, § 1-4-49E.  See Tr. at 37:4-8 ("FUQUA: When you're talking about the enforcement of the statute, that . . . discretion does lie with the Attorney General, the Secretary of State is not the one that seeks criminal penalties or even civil penalties under this statute.").  The Attorney General's Office interprets the law and decides whether enforcement is necessary.  The Attorney General's Office has given such interpretation in the Secretary's briefings.  According to the Attorney General's Office: "'Assist,' as that term is used in Section 1-4-49(A) clearly encompasses more than simply providing a registration form to a potential voter.  It must be something more than a but-for cause of a voter's registration."  Motion to Dismiss at 17.  See Response at 6 ("[I]f a third party voter registration agent takes possession of a completed form, that agent has assisted the voter and must comply with the statute in its entirety.").  At the hearing, Mr. Fuqua stated that the Attorney General's Office interprets "assist persons to register" the same way that the Court has in its MOO. See Tr. at 39:4-9 ("FUQUA: [I]n addition to the fact that this Court has issued an opinion indicating that the term 'assist' means something more than handing out a blank form, that is also the position that the Secretary of State through the Attorney General's Office has taken.").  Often, when faced with a void-for-vagueness challenge, a court looks to the situations in which a statute, such as § 1-4-49, has been enforced, and construes a statute based in part upon how the statute has been enforced.  The Supreme Court, in Grayned v. City of Rockford, noted that a court could look to how those who have enforced § 1-4-49 have interpreted it.  See 408 U.S. at 110.  Neither the New

Mexico Attorney General's Office nor any of the district attorneys have instituted civil or criminal actions against any organizations since the law went into effect. Thus, the only interpretation from either the New Mexico state courts or the Attorney General's Office is the interpretation the Attorney General's Office has given in the course of this litigation. The Plaintiffs argue that the Court should look to the inconsistent statements of election officials and members of the Secretary's office. None of these officials, however, have ever enforced the statute's criminal penalties against anyone -- the Plaintiffs or anyone else. See Tr. at 34:8-14 (Fuqua). Because the statute has never been enforced, the Plaintiffs are asking the Court to give weight to these lay individuals' speculative thoughts how they think § 1-4-49 might be enforced. This evidence is not what the Supreme Court was contemplating when it suggested that courts look to how officials have enforced a statute. Moreover, the Court agrees with the Northern District of California's reasoning in Minority TV Project Inc. v. FCC, that "arguable inconsistencies in a statute's application in a handful of cases do not condemn a statute" and agrees that "[i]f such limited inconsistencies rendered statutes unconstitutionally vague, the majority of statutes would probably not survive a vagueness challenge." 649 F. Supp. 2d at 1047. The statements in the depositions that the Plaintiffs present demonstrate nothing more than that, if § 1-4-49 ever is enforced against the Plaintiffs or anyone else, there may be some uncertainty at the statute's margins, but the Court believes that it is clear what the statute means in the "vast majority of its intended applications." Hill v. Colorado, 530 U.S. at 733.

Finally, the Supreme Court of the United States and the Supreme Court of New Mexico instruct that statutes should be interpreted to avoid constitutional difficulties. See Frisby v. Schultz, 487 U.S. 474, 483 (1988)("To the extent they endorsed a broad reading of the ordinance, the lower courts ran afoul of the well-established principle that statutes will be interpreted to avoid

constitutional difficulties."); Bishop v. Evangelical Good Samaritan Soc'y, 146 N.M. at 478-79, 212

P.3d at 366-67 ("A strong presumption of constitutionality underlies each legislative enactment, and

we will not void a statute where a constitutional construction is reasonably supported by the

statutory language."). This counsels in favor of the Court's plain language reading of § 1-4-49 in

its MOO, and nothing that the Plaintiffs have presented in their motion for reconsideration convinces

the Court that it should endorse a broader reading that runs afoul of the Constitution. "Facial

invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only

as a last resort." Nat'l Endowment for the Arts v. Finley, 524 U.S. at 580 (quotation marks omitted).

The Court does not believe that § 1-4-49's language is facially invalid and will not amend its

previous decision.

The Court does not disregard entirely the interpretation of lay officials about the statutes that

they are required to implement. Ultimately, however, the interpretation of the statute is in the hands,

first, of the Attorney General's Office and the prosecutors who must bring the civil or criminal

proceedings against third-party voter registration agents, and then the courts. The Court is confident

that the Attorney General's Office, the state prosecutors, and the New Mexico courts will reach an

interpretation relatively close to how this Court has interpreted the statute to avoid any constitutional

vagueness problems.

**B.      THE FORTY-EIGHT-HOUR REQUIREMENT DOES NOT RENDER § 1-4-49 VOID FOR VAGUENESS.**

Section 1-4-49B provides:

Organizations employing registration agents or using volunteer registration agents shall deliver or mail a certificate of registration to the Secretary of State or County Clerk within forty-eight hours of its completion by the person registering to vote or deliver it the next business day if the appropriate office is closed for that forty-eight hour period.

NMSA 1978, § 1-4-49B.  The Plaintiffs present evidence that at least one election official believes that third-party agents are subject to the forty-eight hour rule even if they do not take possession of a completed registration form.  See Plaintiffs' Memo. at 9.  They also argue that election officials gave different statements about when the clock begins to run.  One said that it begins when a third-party agent receives a blank form from the County Clerk's office.  See Plaintiffs' Memo. at 10. Another said it runs from the moment a voter completes the registration form, even if it is not handed to a third-party registration agent.  See Plaintiffs' Memo. at 10.  An official stated that a form must be either postmarked or received within forty-eight hours.  See Plaintiffs' Memo. at 10. The Plaintiffs argue that the differing understandings indicate that the law is unconstitutionally vague.

The Court disagrees that the forty-eight hour requirement is unconstitutionally vague.  The plain language of the statute is clear.  Once a voter-registration form is complete, the organization that takes possession of that form has forty-eight hours to return it.  The Plaintiffs' argument that the statute does not indicate when the clock begins to run, demonstrated by the inconsistent answers of officials regarding the requirement, does not make the statute unconstitutionally vague.  Common sense indicates that if the organization has made an effort to deliver or mail the registration form within forty-eight hours of receiving a completed form from a prospective voter, the statute has accomplished its purpose of preventing disenfranchisement.  Regardless what different officials may have told the Plaintiffs in depositions, the statute leaves room for only one reasonable reading -- and a reading a person of ordinary intelligence can discern.  The statute is not vague in its requirement.

In sum, the Court has evaluated the Plaintiffs' new information, but remains confident that § 1-4-49 is not unconstitutionally vague.  The Court, therefore, will not amend or alter its decision in its MOO.

**IT IS ORDERED** that the Plaintiff's Motion for Reconsideration of the Court's February 5, 2010 Order Granting in Part Defendant's Motion to Dismiss is granted in part and denied in part.  The Court grants the motion to reconsider, and, upon reconsideration, denies the Plaintiffs' request to amend or alter its previous dismissal of Count II of the Amended Complaint.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Edward Ricco
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Edward D. Hassi
O'Melveny & Myers LLP
New York, New York

-- and –

Charles E. Borden
Guy G. Brenner
O'Melveny & Myers LLP
Washington, D.C.

      *Attorneys for the Plaintiffs*

Gary K. King
  New Mexico Attorney General
Scott Fuqua
  Assistant Attorney General
New Mexico Attorney General's Office
Santa Fe, New Mexico

      *Attorneys for the Defendant*